(129 So. 33)
**LETT v. DENNIS, Chairman, etc.**
**5 Div. 64.**

Supreme Court of Alabama.
May 31, 1930.

Rehearing Denied June 26, 1930.

Arthur B. Chilton, of Montgomery, and J. O. Middleton, of Clanton, for appellant.

Percy M. Pitts and Omar L. Reynolds, both of Clanton, for appellee.

**GARDNER, J.**

The Chilton County Republican Executive Committee called a primary election to be held "with the State Primary Election on August 12, 1930." In the call resolution all qualified voters, regardless of past party affiliations and who believe in the principles of the Republican party and pledge themselves to support the nominees of such party in the primary, were invited to participate. But as to one desiring to become a candidate there was an additional requirement that he state "under oath how he or she voted in the last general election of 1928, that is, whether said proposed candidate supported the Republican ticket or the Democratic ticket, or voted a split ticket." This oath was required to be filed with the chairman and kept on file open to inspection as well as published in a newspaper published in said county. M. F. Lett desired to become a candidate in said primary for the office of member of the board of education of Chilton county, and complied ' with all requirements of said executive committee as to such candidacy save one. He declined to make the oath above outlined. For his declination to conform to this requirement the chairman refused to certify his name as a candidate for said office, and this mandamus proceeding was resorted to for the purpose of compelling such certification.

■ That petitioner has pursued the proper remedy is clear and indeed not here controverted. 18 R. C. L. 273; Ex parte Jackson, 212 Ala. 496, 103 So. 558; State v. Board, 180 Ala. 489, 61 So. 368.

It is first insisted that particular feature of the resolution requiring such oath is invalid and should therefore be disregarded in that it is violative of the secrecy of the ballot guaranteed to the voter by the laws of the state, as disclosed by a consideration of sections 493, 505, 506, 507, 627, 3916, and 3924, Code 1923, with particular reference to section 627. The question of the right of secrecy of the ballot was discussed and many authorities cited in Ex parte Owens, 148 Ala. 402, 42 So. 676, 8 L. R. A. (N. S.) 888, 121 Am. St. Rep. 67, construing the statute there involved as relating to section 179 of our Constitution. It was held in the Owens Case that the extent of the preservation of secrecy of the ballot was a matter of legislative policy, and by section 652, Code 1923, disclosure is expressly permitted in a contest.

But a review of the numerous authorities upon the subject is here unnecessary. Our statutes clearly contemplate the preservation of the secrecy of the ballot in a primary election as disclosed by the language of section 627, supra. "The ballot of every voter shall be kept secret and inviolate."

In section 672, Code 1923, it is provided that "any executive committee of a party may fix assessments or other qualifications as it may deem necessary, for persons desiring to become candidates for nomination to office at a primary election."

■ That a test by a political organization of party affiliation and party fealty is reasonable and proper to be prescribed for those participating in its primary elections for nomination of candidates for office is well-nigh universally recognized. 9 R. C. L. § 89;

20 C. J. pp. 115, 116, and 125; Merriam & Overacker Primary Elections pp. 69–73 and 124, 125; Kelso v. Cook, 184 Ind. 173, 110 N. E. 987, Ann. Cas. 1918E, 68; Baer v. Gore, 79 W. Va. 50, 90 S. E. 530, L. R. A. 1917B 723; State v. Felton, 77 Ohio St. 554, 84 N. E. 85, 12 Ann. Cas. 65; Rouse v. Thompson, 228 Ill. 522, 81 N. E. 1109.

It is equally well settled that such a test in no manner violates statutory provisions for the secrecy of the ballot, for as has been well said "it is the secrecy of the ballot which the law protects and not secrecy as to the political party with which the voters intend to act." 9 R. C. L. p. 1077; State v. Blaisdell, 18 N. D. 55, 118 N. W. 141, 24 L. R. A. (N. S.) 466, 138 Am. St. Rep. 741; State v. Flaherty, 23 N. D. 313, 136 N. W. 76, 41 L. R. A. (N. S.) 132; Kelso v. Cook, supra.

A further answer to this insistence is that the statutory provisions for preservation of secrecy of the ballot is for the protection of the voter against the conduct of others, and in no manner is intended as restrictive of any voluntary act of his own. The authorities hold that his participation in the primary election either as voter or candidate is entirely voluntary on his part, and by so entering the primary he thus voluntarily subjects himself to the reasonable rules and regulations prescribed therefor. 9 R. C. L. p. 1077, and authorities there cited; 20 C. J. p. 104; Merriam and Overacker Primary Elections p. 127; Kelso v. Cook, supra; State v. Michel, 121 La. 374, 46 So. 430; Hopper v. Stack, 69 N. J. Law, 562, 56 A. 1; Black v. Pate, 130 Ala. 514, 30 So. 434.

We conclude, therefore, the insistence that the requirement of the test oath is violative of the preservation of the secrecy of the ballot as prescribed by statute, is without merit.

The authorities above noted suffice also to demonstrate the unsoundness of the further argument that the test oath requirement is an arbitrary and unreasonable exercise of the committee's power. Political parties are voluntary organizations and their objects "intimate to those who compose them." They are not governmental agencies. Nixon v. Condon (D. C.) 34 F.(2d) 464; Grigsby v. Harris (D. C.) 27 F.(2d) 942; State v. Felton, supra; Kelso v. Cook, supra.

They have grown in importance and influence, and under our republican form of government have become in a sense a part of our great political system. For many years these organizations were unrestrained in any manner, and evils arose calling for legislative action. While they are still voluntary organizations, yet they are affected with a public interest and the authorities generally agree, are subject to regulation by legislative en-

actment. Upon the extent of the regulatory authority of the Legislature, the authorities are divided as is disclosed by an examination of the cases cited in the notes to chapter VI, Merriam and Overacker Primary Elections; see, also, 9 R. C. L. pp. 1072, 1073. No occasion here arises for a review of this question.

Our Constitution (section 190) while demanding regulatory statutes as to primary elections expressly provides against any compulsory primary, and section 604 of the Code follows this constitutional mandate. As to qualifications of candidates, the lawmakers have left such matters where they originally existed, in the governing body of the party. "In the absence of constitutional or statutory provisions to the contrary, the authorities of a political party, such as state and county executive committees may, in accordance with party usage, make and enforce reasonable regulations relating to nominations within the party." 20 Corpus Juris, p. 104.

In discussing the numerous cases in which such test as to party fealty was attacked upon numerous constitutional grounds, Merriam and Overacker, in their work on Primary Elections, say: "The underlying basis of those decisions was well summed up in the language of Mechem: 'A man has a constitutional right to be a partisan, but he has no constitutional right as a non-partisan to participate in partisan proceedings.'"

We have previously noted practical unanimity of opinion in that the prescription of a test of party allegiance is reasonable and proper. Primary Elections, supra, p. 125. The larger number of cases noted had to deal with such a test as applicable to the voters and many of the courts observe the necessity therefor to preserve party organization. 9 R. C. L. § 89.

With greater reason is a like requirement applicable to a candidate who seeks preferment and a position of leadership in his party. 20 Corpus Juris, p. 115; 9 R. C. L. § 90.

We therefore conclude that the committee acted well within its authority, as expressly recognized by section 672 of the Code, in prescribing the test oath of party loyalty, and that its action is not subject to the criticism that it was arbitrary or unreasonable. Our attention is directed to the very recent case of Love v. Wilcox, 28 S.W.(2d) 515, from the Supreme Court of Texas, as having some bearing upon the instant case. We have studied the opinion with much interest and care, but the statute of Texas there considered is so widely variant from that of this state as to render the decision of no value here. As pointed out in the opinion, the Texas statute limited the discretionary power of the party executive committee as to qualifications of participants in the party primary by expressly prohibiting exclusion of any one

because of "former political views or affiliations." The opinion proceeds: "The committee's discretionary power is further restricted by the statute directing that a single, uniform pledge be required of the primary participants. The effect of the statutes is to decline to give recognition to the lodgment of power in a State Executive Committee, to be exercised at its discretion." It is to be noted, therefore, that the Texas statute is the very antithesis of the Alabama statute, which fully recognizes and gives force and effect to the discretionary power of the committee in the opening sentence of section 672 of the Code: "Any executive committee of a party may fix assessments or *other qualifications as it may deem necessary*, for persons desiring to become candidates for nomination to office at a primary election." As contrasted with the Texas statute limiting the committee's discretion, our statute leaves the matter entirely with the committee without limitation or restraint in this regard. No further discussion is necessary to demonstrate that the case of Love v. Wilcox, supra, is wholly inapplicable here.

It is further suggested that under section 612 of the Code, the qualification of the voter is automatically fixed the same as the candidate and that the resolution in question is violative thereof. But that section is not in any manner here involved and a consideration of this insistence as to its proper construction unnecessary. Petitioner seeks relief as a candidate and not otherwise. Any matter affecting those not candidates would in no wise alter petitioner's status.

We have concluded the standard of qualification for the candidate is properly and legally fixed by the resolution, and petitioner's argument would but result in an enlargement by operation of law of the qualifications of those not candidates. With this, he is not concerned, and is therefore in no position to question as it would not affect the requirements of the resolution as to himself. His rights are to be determined by the fixed standard as to candidates, and the only statutory provision applicable thereto is section 672 of the Code.

The petition upon its face discloses petitioner declined to comply with the test oath requirement of the executive committee, and our conclusion is that the demurrer thereto was properly sustained. The judgment will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and FOSTER, JJ., concur.

THOMAS, J., concurs in result.

SAYRE and BOULDIN, JJ., not sitting.

THOMAS, J. (concurring).

I concur in much that Mr. Justice GARDNER has said, yet I prefer to limit my concurrence to the result. I have heretofore adverted to the construction that should be given, or the meaning of sections 612, 672, of the Code, and find no necessity to repeat the same. Wilkinson v. Henry, County Treasurer, ante, p. 254, 128 So. 362.