49 So.2d 546

**BRIDGES et al. v. McCORVEY et al.**

**4 Div. 623.**

Supreme Court of Alabama.

Dec. 14, 1950.

Roy L. Smith, of Phenix City, Chas. L. Rowe, of Elba, G. D. Halstead, of Headland, Wm. M. Beck, of Fort Payne, and Rives & Godbold, of Montgomery, for appellants.

Wm. S. Pritchard, Victor H. Smith and Pritchard & McCall, all of Birmingham, for appellees.

SIMPSON, Justice.

Appeal by petitioners in a proceeding wherein they sought a writ of prohibition and other relief to prevent H. M. Abercrombie, William E. Johnson, H. Coleman Long, J. Herbert Meighan, and Frank J. Mizell, Jr., as members of a subcommittee of the State Democratic Executive Committee of Alabama, from hearing and determining a contest of the election of petitioners as members of the State Democratic Executive Committee from the third congressional district of Alabama. Also made defendant to the petition was Gessner T. McCorvey, as. chairman of the State Democratic Executive Committee of Alabama. On a final hearing in the court below, the Honorable Bowen W. Simmons, acting judge of the circuit court of Coffee County, denied relief. It is. from this judgment that the appeal is prosecuted.

Two opinions have heretofore been promulgated in this matter, the first being Ex parte May, 253 Ala. 684, 46 So.2d 836, where this court held that paragraph 14 of the petition for writ of prohibition constituted sufficient basis to invoke the jurisdiction of the court, on the theory that: "The circuit courts of this state have jurisdiction to issue writs of prohibition to prevent the executive committees of political parties and the sub-committees thereof from proceeding in election contests, where such committees or sub-committees do not have jurisdiction to hear and determine such contests * * *." Citing Ex parte State ex rel. Bragg, 240 Ala. 80, 197 So. 32.

The second opinion is reported as Ex parte May, ante, p. 180, 47 So.2d 640, where the first decision was reaffirmed.

Said paragraph 14 of the petition was to the effect that the statements of contest were not duly filed by the contestants with the chairman of the State Democratic Executive Committee of Alabama and the required sum to cover the cost and expense of said contest was not deposited with the said chairman within fifteen days after the result of said primary election had been declared. Evidence on this issue was with-

out substantial conflict and the lower court, after hearing the same ore tenus, very properly decided that the petitioners had failed to sustain the allegations and denied relief. This appeal cannot seriously challenge the stated ruling, but it is contended that the subcommittee appointed by the chairman of the State Committee to hear and decide the election contests was without jurisdiction and should be restrained from proceeding because allegedly: (1) There is no authority of law or rule of the committee authorizing a contest of the election of a member of the State Democratic Executive Committee; (2) the chairman was without authority to appoint the subcommittee because there was no valid statute, rule or regulation authorizing him so to do; (3) that the subcommittee had no jurisdiction to hear and determine the said election contest because the members of the subcommittee are biased against the petitioners (contestees) in that each of them campaigned against the petitioners and that Mr. Abercrombie, the chairman, had previously expressed his opinion that the elections for members of the State Democratic Executive Committee in the third congressional district (petitioners' district) were fraudulent and the results of said elections should be discarded.

These several propositions had our studious consideration when the two former opinions were delivered, but we did not write to them. We will now, however, treat of them in order.

(1)

It is first contended that there is no provision of law or party rule for the contest of the election of a person to membership on the State Democratic Executive Committee, the argument being that only contests for nominations are provided for and that the petitioners were not *nominated,* but were *elected* to a party office. This argument is taken from a construction placed by appellants on certain sections of the statute providing for contests in primary elections, such as §§ 373, 374, 375, 378, 380, 384, 387, and 388, Title 17, Code 1940, which speak of contests of *nominations* of a person, rather than using the term *elec-*

*tion.* We have consistently thought this theory to be unsound.

Section 341 provides that selection of members of the state executive committee of a party may be done in such manner as the governing authority of the party shall provide, and in the instant case the State Democratic Executive Committee, which is the governing authority of a party, did by resolution provide for the selection of its members in the Democratic primary. The contest is thus governed by the provisions of Title 17. But so also does the same title provide for the selection (nomination) of the members of the party to run for office in the general election.

A candidate seeking nomination of a party to run for a state or county office is a candidate for a party office and, when nominated, has a status as a quasi officer. Boyd v. Garrison, 246 Ala. 122, 19 So.2d 385(3); 18 Am.Jur. 285, § 157. Executive committeemen of a party, when elected as such in the primary, are also party officers. 18 Am.Jur. 271, § 139.

Section 373, Title 17, provides for the contest of nominations of candidates for county offices to be heard and determined by the county executive committee as to such offices and by the state committee "as to candidates for all other offices". This section, like others, such as §§ 378 and 384, therefore undoubtedly refers to all party offices. So when § 372 confers on the state committee the right to hear and determine contests regarding candidates in primary elections for all offices voted for in that election, except candidates for county offices, it necessarily includes candidates for the party office of membership on the state committee voted for in the primary election, pursuant to the provisions of the resolution of the state committee calling the primary and specifying the offices to be filled.

"Nomination" and "election" seem to be used interchangeably throughout the many pertinent sections, as the nature of the office might require, without recognizing a distinction in meaning. § 412 as to words and phrases in the statute indicates such a purpose. And to confine contests

under § 384 to those selected in a primary to run for an office in the general election is too restrictive to meet with favor. § 394 itself makes provision for the appointment of a subcommittee as was done in this case, with authority, among other things, "to hear, consider and decide any contest of *any election* or of the *nomination* of any candidate in any election held under this chapter". (Emphasis supplied.)

■ It seems most evident the statute, in providing for contests in primary elections of all offices, includes not only nomination of candidates of the party for state office, but also those who are named to fill any other party office, including that of executive committeeman. Another section which could be mentioned is § 336, which states, "A primary election, within the meaning of this chapter, is an election held by the qualified voters, who are members of any political party, for the purpose of nominating a candidate or candidates for *public* or *party* office."

■ To rationalize further, one elected in a primary election to membership on the state executive committee *is a person who* has been named or nominated to that party office. To nominate is to name (Webster), either by election or in a convention or some other way; and to elect to an office is to name one in an election for that office. Primary elections are to name by election persons to party offices, whether they are candidates of the party for office or named to some other party office. The *ratio decidendi* of Smith v. McQueen, 232 Ala. 90 (3, 4), 166 So. 788, furnishes an apt analogue, where it was said that, while "election" and "appointment" are not synonymous: " * * * In common use * * * it [election] has come to denote such a selection made by a distinctly defined body, as by 'the voters of an entire class,' and while the words 'appointment' and 'election' are not synonymous, yet they are sometimes used interchangeably in statutes. * * *" 232 Ala. 93, 166 So. 791.

Also in Ex parte State ex rel. Bragg, 240 Ala. 80, 197 So. 32, this court spoke of a nomination of a candidate for the office of judge of probate in the general election as "the *election* of a Democratic candidate

for the office". 240 Ala. 83, 197 So. 32, 34. (Emphasis ours.)

■ We think it sound to hold that the statute discloses and intended to make no distinction between contests of persons elected in a primary election as nominees of the party to run for office, and those named in the same primary to fill other party offices, such as that of executive committeemen.

(2)

■ It is next insisted that the subcommittee had no power to act, for that there was no authority vested in the chairman of the state committee to appoint such committee. This argument seems to be taken from § 394, which stipulates that the state executive committee of any party shall have the power to appoint or to authorize and empower the chairman thereof to appoint a subcommittee to hear, consider and decide any such contest. It is argued that the committee did not empower the chairman to make the appointment and therefore the committee was not duly constituted.

This argument is answered by Rule 14 of the state committee, which provides that "the chairman of this committee is hereby authorized and empowered to create any special or subcommittee as may be desired." And we are not so sure but what without any such rule the chairman would not have such authority anyway. We note in § 383 the proviso that "The chairman of the state executive committee may appoint a sub-committee of not less than three to hear and decide *any* contest". (Emphasis ours.) But be that as it may, we think Rule 14 suffices.

■ We think it not inappropriate here to observe that courts are very reluctant to interfere with party matters and, unless there is clear violation of a jurisdictional requirement, will lay no hand on such matters. The quoted rule above, if necessary at all, was in our opinion sufficient to authorize the appointment by the chairman of the subcommittee. As was observed by the Kentucky Supreme Court in Moody v. Trimble, 109 Ky. 139, 58 S.W. 504, 505, 50 L.R.A. 810, 812: " * * * The settlement of such questions, in the nature of

682

things, should be left to party authority; and therefore we will not scan too closely party rules which undertake, however imperfectly, to confer authority on its various committees to manage party affairs to the best interests of the organization, nor deny such authority, even if it be conferred in terms somewhat general. * * *"

(3)

The next argument for the court to intrude itself into this party matter is that the subcommittee, as appointed, is biased, some or a majority of its members having disfavored the election of the appellants (petitioners), and the chairman of such committee, it is asserted, having already expressed his opinion that the election of the executive committeemen in that district appeared fraudulent and the results should not be counted.

This constitutes no ground of disqualification. Fulton v. Longshore, 156 Ala. 611, 615, 46 So. 989, 19 L.R.A.,N.S., 602; Riley v. Wilkinson, 247 Ala. 231(17), 23 So.2d 582. The case of Fulton v. Longshore, supra, is one of much factual similarity, where Judge Longshore, before whom an election contest was pending, belonged to the same (Populist) party as the defending candidate in the contest, was an active and partisan supporter of that candidate, and had expressed an opinion on election day that a voter who had been challenged was qualified to vote. In denying his disqualification to sit in the contest, this court said: "* * * 'The interest which will disqualify must be a pecuniary one, or one affecting the individual rights of the judge.' * * * no pecuniary or personal interest is here shown which will disqualify the respondent. He can have no possible pecuniary interest in the result of the contest over the sheriff's office, nor does the contestation in any possible way affect any of his individual or personal rights. It cannot be supposed that the interest he felt, as a party man, for the success of the Populist ticket, would influence him in the discharge of his sworn duty to try the case fairly and impartially. The law tolerates no such supposition or presumption, and therefore it can have no

legal existence. Such a presumption could only be indulged upon legal grounds of disqualification. The interest which a judge may have as a citizen in a public question is not a personal one. * * *" 156 Ala. 614-615, 46 So. 990.

But were the Longshore case not conclusive of the question, a brief analysis of the contention will illustrate its lack of merit. This contest is one of the phases of an intra-party fight between so-called regular Democrats and so-called States' rights Democrats, where the control of the State Democratic Executive Committee by the respective factions was to be determined by the selection in the primary of the members of the state committee. Appellants (petitioners) belonged to the first faction and the majority of the subcommittee were States' rights Democrats, and the argument runs that in view of this the subcommittee should be disqualified on account of bias. Our own decisions are directly to the contrary, and no case has come to our attention to support such a view. Of necessity there was a distinct cleavage of views among all the members of the state committee, some espousing the candidates of one faction and the others the candidates of the other faction, and this division of opinion was fought out in the primary election from which this contest has emanated. It would be sophistical to argue that a subcommittee of members not aligned with either faction could possibly be obtained. So reduced to its last analysis, the contention of appellants is but an argument that since the contestees are apprehensive that they do not have a majority of their friends on the subcommittee, the court should disqualify it and authorize the appointment of members who do favor them. The law does not operate to that result. The jurisdiction and authority of the State Democratic Executive Committee are exclusive—there is no other court or tribunal before whom the rights of the contestants can be heard— and to hold the alleged grounds to be a basis for disqualification would be but to disqualify the entire committee because of its partisan views. This would be a denial of the right of contest, a denial of justice, which is without the sanction of the law.

Jeffersonian Publishing Co. v. Hilliard, 105 Ala. 576, 580, 17 So. 112.

The judgment must be affirmed.

Affirmed.

All the justices concur except GARD-NER, C. J., not sitting.