57 So.2d 395

## RAY v. BLAIR.

### 6 Div. 395.

Supreme Court of Alabama.

Feb. 29, 1952.

Writ of Certiorari Granted March 24, 1952.

See 72 S.Ct. 637.

Reversed on Mandate April 18, 1952.

Harold M. Cook, Birmingham, and Geo. A. LeMaistre, J. Gordon Madison, and Jas. J. Mayfield, Tuscaloosa, for appellant.

152

Horace C. Wilkinson, Birmingham, for appellee.

LIVINGSTON, Chief Justice.

This is an appeal by Ben F. Ray as Chairman of the State Democratic Executive Committee from an order entered in the Circuit Court of Jefferson County, Alabama, on the 6th day of February, 1952 awarding the appellee a writ of mandamus directed to the said Ben F. Ray as Chairman of the State Democratic Executive Committee of Alabama ordering, directing and commanding him to certify to the Secretary of State of Alabama, not less than forty days prior to May 6, 1952, the name of Edmund Blair as a candidate for nomination for presidential and vice-presidential elector in the primary election of the Democratic Party to be held on May 6, 1952.

On January 16, 1952, the State Democratic Executive Committee of Alabama held a meeting in Montgomery, Alabama, and adopted a resolution in which it prescribed a form for declaration of candidacy to be filed with the Chairman of the Committee as prescribed in Title 17, Section 348 of the Alabama Code of 1940.

The Committee incorporated in this form the following: "* * * I further agree to abide by the result of the primary elections in which I am a candidate and I do pledge myself to aid and support all of the nominees in said primary elections, and *also the nominees of the National Convention of the Democratic Party for president and vice-president of the United States.*"

Mr. Blair struck the italicized portion of the foregoing pledge from the declaration of candidacy filed with the Chairman.

In the form prescribed by the Committee, it was provided that the candidate for nomination should swear, "I hereby certify that I did not vote, in the general election held in November, 1950, a Republican ticket, or any independent ticket, or the ticket of any party or group, other than the Democratic Party or for any one other than the nominees of the Democratic Party, or any ticket other than the Democratic ticket, or openly and publicly in said general election oppose the election of the nominees of the Democratic Party, or any of them. * * *"

Mr. Blair added the words "in Alabama" after the words "Democratic ticket" and after the words "Democratic Party" where the words appear in the proposed form of declaration of candidacy.

After striking out the sentence which would pledge him to support the nominees of the National Convention of the Democratic Party for president and vice-president of the United States, Mr. Blair inserted in the declaration of candidacy filed with the Chairman these words: "But I will not cast an electoral vote for Harry S. Truman or for any one who advocates the Truman-Humphrey Civil Rights Program."

After an extended hearing covering several days the trial court ruled that the portion of the proposed pledge stricken by Blair was invalid insofar as he was concerned and ordered a writ of mandamus issued directed to the Chairman requiring

him to certify Mr. Blair's candidacy to the Secretary of State.

Before entering upon the trial the defendant (appellant) made motion to quash the rule nisi issued on the filing of the petition and demurred to the petition on sundry grounds. The motion to quash and the demurrer were overruled. The defendant reserved an exception to the order of the court overruling the motion to quash and these rulings are separately assigned as error.

The principal question here involved is whether one who offers to become a candidate for nomination in the May primary as a Democratic candidate in the November election for the office of an elector, provided for in the Twelfth Amendment to the United States Constitution, must take an oath as a condition to becoming such a candidate, as prescribed by the State Democratic Executive Committee, that he will aid and support the nominees of the National Convention of the Democratic Party for president and vice-president of the United States. The other features of the oath may be laid aside for present purposes.

The theory on which the petitioner claims the right to become a candidate in the primary without taking the prescribed oath is that the Twelfth Amendment, *supra,* gives electors therein provided for the right to be free to vote for a president and vice-president of the United States without compulsion on the part of any organization or authority. That said right of freedom in that respect is a constitutional right. Therefore, the State Democratic Executive Committee has no power to require them to forego that right of freedom as a condition to become a candidate in the primary held pursuant to the laws of the state of Alabama.

■ The State Democratic Executive Committee may prescribe the political qualifications of candidates in a Democratic primary election. Sections 345, 347, Title 17, Code 1940; Smith v. McQueen, 232 Ala. 90, 166 So. 788; 18 Am.Jur. 280.

The legal status of candidates for party office or for party nomination to state office in a primary held and conducted according to law, and the cost of which is provided for out of public revenues is now well established. Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987; 18 Am.Jur. p. 273; Bridges v. McCorvey, 254 Ala. 677, 49 So.2d 546.

■ The state laws applicable are authoritative so long as they do not infringe upon constitutional or federal enactments which have application and are consistent with the Constitution.

■ Appellant argues that the Committee may designate its nominees or select its party officers without referring the issues to an election or a convention. Smith v. McQueen, supra. And that here, the Committee could have selected its nominees for election in the November election of electors with the power conferred by the Twelfth Amendment. If so the Committee would thereby grant a privilege to its nominees, which they did not have except by authority of that committee, either with or without a primary election. Such a grant having legal status with or without a primary election, cannot be conditioned upon the relinquishment by the grantee of constitutional rights. When attempted, the grant stands without the condition. Frost v. R. R. Comm., 271 U.S. 583, 46 S.Ct. 605, 70 L.Ed. 1101, 47 A.L.R. 457; Terral v. Burke Cont. Co., 257 U.S. 529, 42 S.Ct. 188, 66 L.Ed. 352.

So that the decisive inquiry here is whether the Twelfth Amendment confers on electors freedom to exercise their judgment in respect to voting in the electoral college for a president and vice-president.

The Constitution of the United States provides:

"Article II

"* * *. Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.

"The Congress may determine the Time of choosing the Electors, and the Day on

which they shall give their Votes; which Day shall be the same throughout the United States. * * *"

"Article XII

"The Electors shall meet in their respective states, and vote by ballot for President and Vice-President, one of whom, at least, shall not be an inhabitant of the same state with themselves; they shall name in their ballots the person voted for as President, and in distinct ballots the person voted for as Vice-President, and they shall make distinct lists of all persons voted for as President, and of all persons voted for as Vice-President, and of the number of votes for each, which lists they shall sign and certify, and transmit sealed to the seat of the government of the United States, directed to the President of the Senate;—The President of the Senate shall, in presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted;—The person having the greatest number of votes for President, shall be the President, if such number be a majority of the whole number of Electors appointed; and if no person have such majority, then from the persons having the highest numbers not exceeding three on the list of those voted for as President, the House of Representatives shall choose immediately, by ballot, the President. But in choosing the President, the votes shall be taken by states, the representation from each state having one vote; a quorum for this purpose shall consist of a member or members from two-thirds of the states, and a majority of all the states shall be necessary to a choice. And if the House of Representatives shall not choose a President whenever the right of choice shall devolve upon them, before the fourth day of March next following, then the Vice-President shall act as President, as in the case of the death or other constitutional disability of the President. The person having the greatest number of votes as Vice-President, shall be the Vice-President, if such number be a majority of the whole number of Electors appointed, and if no person have a majority, then from the two highest numbers on the list, the Senate shall choose

the Vice-President; a quorum for the purpose shall consist of two-thirds of the whole number of Senators, and a majority of the whole number shall be necessary to a choice. But no person constitutionally ineligible to the office of President shall be eligible to that of Vice-President of the United States."

The members of this court expressed their views in response to an inquiry by the Governor of Alabama on April 1, 1948, in respect to a legislative enactment making certain requirements of an elector in casting his vote in the college. Opinion of the Justices, 250 Ala. 399, 34 So.2d 598. The Court is now willing to adopt that Opinion of the Justices as its own.

We appreciate the argument that from time immemorial, the electors selected to vote in the college have voted in accordance with the wishes of the party to which they belong. But in doing so, the effective compulsion has been party loyalty. That theory has generally been taken for granted, so that the voting for a president and vice-president has been usually formal merely. But the Twelfth Amendment does not make it so. The nominees of the party for president and vice-president may have become disqualified, or peculiarly offensive not only to the electors but their constituents also. They should be free to vote for another, as contemplated by the Twelfth Amendment.

The question is a federal one, and there has been no authoritative pronouncement as to it. So that we are free to apply the plain logic of the situation, which is the plain meaning of the Twelfth Amendment. It would serve no useful purpose to review cases not directly in point by other state courts. Some of their implications support and some oppose our views here expressed.

We are not here concerned with questions of political expediency. As to whether or not the Twelfth Amendment to the Constitution of the United States is outmoded and should be changed is not for the courts to say. The Constitution of the United States provides its own mode of amendment. We cannot usurp that authority by judicial opinion.

156

We have not treated the several assignments of error separately or in the order in which they are made. Some of them are based on the overruling of defendant's motion to quash and the demurrers interposed to plaintiff's petition for an alternative writ of mandamus. Others relate to the admission and rejection of evidence. Supreme Court Rule 45, Code 1940, Tit. 7 Appendix, provides as follows: "Reversals; new trial; error without injury.—Hereafter no judgment may be reversed or set aside, nor new trial granted by this court or by any other court of this state, in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal of special charges of the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken, or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."

We have carefully examined each of the assignments of error above referred to and are of the opinion that they are either without merit or do not probably injuriously affect the substantial rights of the parties. 55 C.J.S., Mandamus, § 32, p. 62; 12 C.J. 785, 16 C.J.S., Constitutional Law, § 96.

It is our opinion that there is no error in the record and the judgment of the lower court is due to be and is affirmed.

Affirmed.

FOSTER, LAWSON, STAKELY and GOODWYN, JJ., concur.

BROWN and SIMPSON, JJ., dissent.

BROWN and SIMPSON, Justices (dissenting).

The appeal in this case is from the final judgment of the Circuit Court of Jefferson County awarding to appellee the peremptory common law writ of mandamus directed to the appellant Ben F. Ray, as Chairman of the State Democratic Executive Committee, "directing and commanding him to certify to the Secretary of State of Alabama, not less than forty days prior to May 6, 1952, the name of Edmund Blair as a candidate for nomination for presidential and vice-presidential elector in the Primary Election of the Democratic Party to be held on May 6, 1952."

The judgment was entered on the 6th day of February, 1952, and the writ was promptly issued by the clerk of the court and served by the sheriff on the 7th day of February, 1952.

Before entering upon the trial, the defendant (appellant) made motion to quash the rule nisi issued on the filing of the petition and demurred to the petition on sundry grounds. The motion to quash and the demurrer were overruled. The defendant reserved an exception to the order of the court overruling the motion to quash and these rulings are separately assigned as error.

Mandamus under our system of jurisprudence is strictly "civil in its character" and must be commenced by petition showing that the defendant has in the circumstances stated in the petition authority to do the act sought to be coerced, that it is his duty to so act and that the petitioner has a clear legal right to have said act performed at the time he filed his petition, which must show a prima facie right in petitioner and that he has no other adequate remedy. Code of 1940, Tit. 7, § 1072; State ex rel. Pinney v. Williams, 69 Ala. 311; Home Guano Co. v. State, 193 Ala. 548, 69 So. 419; Board of Education of Jefferson County v. State ex rel. Kuchins, 222 Ala. 70, 131 So. 239; Williams v. Board of Dental Examiners of Ala., 222 Ala. 411, 133 So. 11; Ex parte State ex rel. Hain, 217 Ala. 702, 117 So. 418; Minchener v. Carroll, 135 Ala. 409, 33 So. 168; Jones v. Jones, 249 Ala. 374, 31 So.2d 81; Poyner v. Whiddon, 234 Ala. 168, 174 So. 507; Hodges v. Board of Education of Geneva County, 245 Ala. 64, 16 So.2d 97; Ex parte Brandon, 243 Ala. 610, 11 So.2d 561; Ex parte Bahakel, 246 Ala. 527, 21 So.2d 619.

The original petition avers, in short, that petitioner is a resident taxpayer and qualified voter of St. Clair County; that he was elected a Democratic Presidential Elector

in 1948 on a platform whereby he pledged not to support President Truman and he did not cast an electoral vote for President Truman in 1948; that the State Democratic Committee on January 26, 1952, adopted a resolution set out as Exhibit A to the petition; that petitioner desires to qualify as a candidate for presidential and vice-presidential elector in the 1952 Democratic Primary in Alabama. On the 29th of January, 1952, petitioner offered to qualify as such candidate with the State Chairman of the Committee of Alabama "and as the executive and administrative officer of said committee, and on said date tendered to the said chairman the sum of ten ($10.00) dollars in lawful money of the United States of America in payment of the entrance or qualifying assessment as provided for in the aforesaid resolution."

Petitioner further avers that he also presented and filed with the said Ben F. Ray as such Chairman an affidavit in words and figures as follows:

"State of Alabama
"Jefferson County.

"I, hereby declare myself to be a candidate for the Democratic nomination in the primary elections to be held on Tuesday, the 6th day of May, 1952, and on Tuesday, the 3rd day of June, 1952, for the office of Presidential and Vice-Presidential elector. I hereby certify that I did not vote, in the general election held in November, 1950, a Republican ticket or any independent ticket, or the ticket of any party or group, other than the Democratic Party, or for any one other than the nominees of the Democratic Party in Alabama, or any ticket other than the Democratic ticket in Alabama, or openly and publicly in said general election oppose the election of the nominees of the Democratic Party in Alabama, or any of them. I further agree to abide by the result of the primary elections in which I am a candidate and I do pledge myself to aid and support all the nominees in said Primary Elections, but I will not cast an electoral vote for Harry S. Truman or for anyone who advocates the Truman-Humphrey Civil Rights Program. I further certify that I am a qualified elector of the State of Alabama and possess the qualifications fixed by law for the office for which I am a candidate, and if a candidate for the Democratic nomination for Judge of a Court of Record, I do further certify that at the time of filing this declaration of candidacy, I am not under disbarment or suspension." The declaration was signed and sworn to by appellee before a notary public on the 29th of February, 1952.

The petition further avers that said Ray as Chairman of the State Democratic Executive Committee of Alabama accepted the foregoing declaration of candidacy and the sum of ten dollars tendered by petitioner in payment of the assessment against candidates for the office for which he sought to qualify "and stated that he wanted to think it over before deciding what action he would take on said declaration of candidacy."

The petition further avers that on Wednesday the 30th of January, 1952, he caused a letter to be delivered to Ray as such Chairman, reiterating the fact of the filing of his declaration of candidacy and Ray's response thereto stated: "We construe this as an indication on your part that you will not perform your duty when the time arrives and there will not be sufficient time between your refusal and the primary to obtain relief in court if you wait until that time. You are accordingly notified that we are preparing a petition for mandamus which will be filed during the day unless you advise us that you will agree to certify Mr. Blair's candidacy to the Secretary of State within the time required by law." The petition further avers that said Chairman has not agreed to certify petitioner's candidacy and that "petitioner is informed and believes, and on such information and belief, charges and states that the said Ben F. Ray as such Chairman will not certify petitioner's candidacy for such nomination" as required by Title 17, § 344, Code of 1940. The petition further avers that petitioner on the date of filing the petition on the 30th day of January, 1952, mailed qualifying papers to the Secretary of State.

By reference to Exhibit A to the petition it appears that petitioner limited his pledge of support to nominees in the primary to

precinct, county, district and state officers and omitted or deleted from the pledge the following: "I do further pledge myself to aid and support the nominees of the National Convention of the Democratic Party for President and Vice President of the United States."

The amendment to the petition merely alleged in substance and legal effect that Chairman Ray manifested a settled purpose and determination not to certify and to delay his decision until it would be too late; that such delay was a severe violation of the petitioner's rights and embarrassed petitioner by such delay and prevented him from informing his friends and supporters that he was a candidate for said office.

There is an absence of allegation in the petition that the State Executive Committee exceeded the authority conferred on it by §§ 347, 348 and 350, Title 17, Code of 1940. Nor is it anywhere averred or asserted in the petition that the regulations adopted impinge any provisions of statute law, Constitution of Alabama or the Constitution of the United States, or conflicts with any Act of the Congress of the United States.

It is important to note in passing that the power and authority to prescribe the qualifications for candidates who seek to participate in the primary election of a party is vested in the executive committee, not in the chairman, and we find nothing in the statute that authorizes, empowers or even suggests that the chairman of the committee may change, alter or ignore the prescription of the executive committee of the party.

Section 347 provides: " * * * but every state executive committee of a party shall have the right, power and authority to fix and prescribe the political or other qualifications of its own members, and shall, in its own way, declare and determine who shall be entitled and qualified to vote in such primary election, *or to be candidates therein*, or to otherwise participate in such political parties and primaries; * * *." [Italics supplied.]

Section 348 provides: "Any person desiring to submit his name to the voters in a primary election shall, not later than March first, next preceding the holding of such primary election file his declaration of candidacy *in the form prescribed by the governing body of the party with the chairman* of the county executive committee if he be a candidate for a county office, and with the chairman of the state executive committee, if he be a candidate for any office except a county office, and in like manner, and before March first, next preceding the holding of such primary election, pay any assessments that may be required to be paid by him." [Italics supplied.]

Section 350, Title 17, Code of 1940, provides *inter alia*: "At the bottom of the ballot and after the name of the last candidate shall be printed the following, viz: 'By casting this ballot I do pledge myself to abide by the result of this primary election and to aid and support all the nominees thereof in the ensuing general election.' * * *"

It was conceded in argument at the bar that the members of the State Executive Committee who participated in the proceedings of the committee in adopting the resolution made Exhibit A to the petition were elected in the previous Democratic Primary of May, 1950. Certainly they are the representatives of the Democratic Party empowered by their election and the provisions of the statute to declare the policies of their party formed, integrated and bound together by the principles and practices of reciprocity, common honesty and good faith for the common good of all. The Chairman of the State Democratic Executive Committee is merely the executive head of the committee and has no authority to change, waive or ignore the resolutions of the committee, unless he is so authorized by the committee, to satisfy the individual opinion or political philosophy of a member who desires to qualify as a candidate in the primary to obtain the benefit of the party's influence and prestige in the primary. There is nothing in the circumstances alleged in the petition requiring petitioner to offer as a candidate in the Democratic Primary. His act in so offering himself as such is his voluntary act.

Lett v. Dennis, 221 Ala. 432, 129 So. 33; Smith v. McQueen, 232 Ala. 90, 166 So. 788.

The statute, Code of 1940, Title 17, § 145, provides the petitioner with a plain and adequate remedy to run as a candidate for presidential elector and if elected to be free to support whomsoever he pleases. It provides: "The probate judge of each county shall cause to be printed on the ballots to be used in their respective counties, the names of all the candidates who have been put in nomination by any caucus, convention, mass meeting, primary election, or other assembly of any political party or faction in this state, and certified in writing and filed with him not less than twenty days previous to the date of election. The certificate must contain the name of each person nominated and the office for which he is nominated, and must be signed by the presiding officer and secretary of such caucus, convention, mass meeting, or other assembly, or by the chairman and secretary of the canvassing board of such primary election."

It is familiar law that courts will not consider and treat the constitutionality of a legislative act or a statute on the mere suggestion in the pleading at the instance of parties whose legal rights are not affected. Howle v. Birmingham, 229 Ala. 666, 159 So. 206; State ex rel. Knox v. Dillard, 196 Ala. 539, 72 So. 56; Smith v. McQueen, 232 Ala. 90, 166 So. 788.

The circuit court in disposing of the case seems to have taken the view that the Opinion of the Justices, No. 87, is controlling in this case, especially the interpretation therein given to the 12th Amendment to the Constitution of the United States the language of which is, "The Electors shall meet in their respective states, and vote by ballot for President and Vice-President * * *", which was interpreted thus: "The language of the Federal Constitution clearly shows that it was the intention of the framers of the Federal Constitution that the electors chosen for the several states would exercise their judgment and discretion in the performance of their duty in the election of the president and vice-president and in determining the individuals for whom they would cast the electoral votes of the states. History supports this interpretation without controversy. The Federalist, Vol. II, p. 35; Story on the Constitution, 5th Ed., Vol. 2, p. 318; The World Book Encyclopedia, Vol. 5, p. 2246; The Laws of the American Constitution by Burdick, § 25." Opinion of the Justices, 250 Ala. 399, 34 So.2d 598, 600.

At first blush it may appear that the Opinion of the Justices, supra, lends support to petitioner's claim. However, on more thorough examination, it is clear that said opinion is inapposite. The petitioner is not a presidential elector. He is merely asserting a right to become a candidate in the Democratic Primary and his act in filing his application of candidacy is purely of his own volition. Lett v. Dennis, 221 Ala. 432, 129 So. 33; 9 R.C.L. p. 1077. He is seeking to become a candidate in a Democratic Primary without complying with the resolution duly adopted by the State Democratic Executive Committee. He is not an elector chosen by the State of Alabama and is not within the ambit of the 12th Amendment to the Constitution of the United States. Nor does he claim or assert that the right he seeks to coerce is protected by said amendment. Said advisory opinion was not dealing with a speculative right or status. It was dealing with an Act of the Legislature, presumptively valid and constituting a rule of civil conduct enacted by the supreme power of the state—the legislature—by which all persons would be governed if the statute stood the test of constitutionality. That opinion is clearly not an authority applicable to the petitioner's case as presented by the pleading.

Pursuing the discussion further, that opinion, as stated, concerned a legislative enactment designed to control the free judgment of electors to the electoral college after they had been chosen as such in the general election. Its rationale, however, is now used to prevent a political party from prescribing the qualifications for a candidate in a primary election. Conceding that the Federal Constitution does safeguard to a presidential elector the right

of free and independent choice in the electoral college, we are unable to see that this principle would inhibit a political party from fixing the qualifications of a candidate desiring to run in a party primary election. It would give such a candidate no right to become an elector via any particular political party route unless he meets the qualifications prescribed by the party. Though such a candidate, after having been elected as an elector in the general election, might have the right to cast his free ballot in the electoral college, Amendment Twelve of the Constitution guarantees him no right to go to the college by any certain primary election route. So considered, the 1948 opinion would not preclude a political party, here the Democratic Party, from requiring of such a candidate a pledge to support his party's nominees. Any restraint which party loyalty pledges might impose on a candidate for elector as a predicate for his running in a party primary is in no sense a restraint on his right to exercise his free ballot in the electoral college should he be elected in the general election, but is merely a restraint on his right to run in that particular party primary. Stated otherwise, the signing of the pledge prescribed in the instant case in no way interferes with the free exercise of an elector's ballot in the electoral college. This pledge is in reality a statement of present intention, as distinguished from a pledge or obligation as to future acts. It creates no enforceable legal obligation on the part of the candidate to vote for a party nominee in the general election. On the contrary, it merely requires him to declare that his present intention is in accord with recognized party principles. Cf. Swindall v. State Election Board, 168 Okl. 97, 32 P.2d 691, 693.

Any other view, it seems, would destroy effective party government and would privilege any candidate, regardless of his political persuasion, to enter a primary election as a candidate for elector and fix his own qualifications for such candidacy. This is contrary to the traditional American political system. Mairs v. Peters, Fla., 52 So.2d 793, 795.

Many incongruous situations could result from the prevailing opinion. We will mention one: A voter is required by the present party rule to take the same pledge as a candidate in the ensuing primary election. A candidate for elector is relieved from taking the same pledge. If appellee should be nominated as a presidential elector in the primary election, then to carry out his pledge as a voter in that primary (to support the nominees for president and vice-president of the Democratic National Convention), he could not vote for himself as a presidential elector in the general election if Truman or his ticket were the Democratic nominees. This because as a voter, when he cast his ballot in the primary election, he pledged to support said nominees and as a candidate for elector he declined to and in effect pledged not to. Indeed, to be consistent, he could not vote for himself in the primary, since his pledge as a voter (to support the National Convention nominees) conflicts with his pledge as a candidate for elector (not to support them under circumstances). Many other incongruities could be thought of, but we forego further discussion and merely make this observation as a basis for our conclusion that we should still adhere to such cases as Lett v. Dennis, 221 Ala. 432, 129 So. 33, and others cited supra.

It is a universal rule applicable to courts of equity as well as to courts of law that, "Pleadings are statements in logical and legal form of the facts which constitute plaintiff's cause of action or defendant's ground of defense. They are the allegations of the parties of what is affirmed on the one side and denied on the other, disclosing to the court or jury, who have to try the cause, the real matter in dispute * * *. They are designed to advise the court and the adverse party of the issues and what is relied on as a cause of action or a defense, in order that the court may declare the law and that the adverse party may be prepared on the trial to meet the issues raised. * * *" 71 C.J.S., Pleading, § 1 p. 17; Woodward Iron Co. v. Marbut, 183 Ala. 310, 62 So. 804. Of course, on demurrer the pleadings are construed most strongly against the pleader.

Nor is petitioner in a position to invoke the protection of the 14th and 15th Amendments to the Federal Constitution, basically designed to prohibit the states to deny to a citizen the right to vote on account of race, color or previous condition of servitude and guaranteeing the equal protection of the law. The clear purpose of the 15th Amendment was to protect the right of the slaves who were freed after the War between the States and their descendants and to deny to the states the power to deprive such persons of the right to vote on that ground. Therefore, the decisions of the Supreme Court of the United States dealing with cases of alleged fraudulent discrimination against the Negro on account of race, color or previous condition of servitude are inapposite to the controversy presented on this record. That court has not, so far, extended any such principle to deny to a political party the right to fix the qualifications of candidates in a primary election and our view is, we should not anticipate to so extend it.

So construing the averments of the petition we are of opinion that the petition fails to show that the Chairman of the State Democratic Executive Committee has the legal right and authority to accept Blair's application for qualification, which confessedly does not meet the requirements of the resolutions passed by said committee, or to certify his name to the Secretary of State. Nor is it shown by the averments of said petition that petitioner has a clear legal right to obtain such certification.

Amendment 6–A to the petition avers that Chairman Ray manifested a settled purpose and determination not to certify and to delay his decision until it would be too late and amendment 6–B avers that the delay was a severe violation of petitioner's rights and embarrassing to him. These averments are mere conclusions of the pleader.

We are of opinion, therefore, that the circuit court erred in overruling the motion of the Chairman of the Committee (appellant here), to quash the alternative writ of mandamus and in overruling the demurrer to said petition, the grounds of which are specific and challenge its sufficiency.

We are further of opinion that the judgment of the circuit court should be reversed and the demurrer sustained and the petition dismissed. Smith v. McQueen, supra; Lett v. Dennis, supra; Hodges v. Board of Education etc., 245 Ala. 64, 16 So.2d 97.

On Remandment

PER CURIAM.

Our judgment of affirmance in this cause having been reversed by the Supreme Court of the United States, 343 U.S. 154, 72 S. Ct. 598, the cause on this appeal now being further considered by this court; it is ordered that the judgment of the Circuit Court of Jefferson County, Alabama, be and the same hereby is reversed and annuled, and judgment is here rendered denying the writ of mandamus prayed for in said cause and dismissing the petition therefor.

All the Justices concur, except GOODWYN, J., not sitting.