254 F.Supp. 543 (1966)
UNITED STATES of America, Plaintiff,
v.
The EXECUTIVE COMMITTEE OF the DEMOCRATIC PARTY OF GREENE COUNTY, ALABAMA, J. E. Cameron, Chairman of the Executive Committee of the Democratic Party of Greene County, Alabama, J. Dennis Herndon, Judge of Probate for Greene County, Alabama, M. L. Porter, C. S. King, R. D. Cables, individually and as members of a class, the Executive Committee of the Democratic Party of Sumter County, Alabama, Ira D. Pruitt, Sr., Chairman of the Executive Committee of the Democratic Party of Sumter County, Alabama, Wilbur E. Dearman, Judge of Probate for Sumter County, Alabama, A. B. Stutts, James Weatherly, A. O. Campbell, individually and as members of a class, Defendants.
UNITED STATES of America, Plaintiff,
v.
The EXECUTIVE COMMITTEE OF the DEMOCRATIC PARTY OF MARENGO COUNTY, ALABAMA, J. C. Camp, Chairman of the Executive Committee of the Democratic Party of Marengo County, Alabama, R. J. Westbrook, Judge of Probate for Marengo County, David P. Holley, James G. McCoy, Jr., and Thomas H. Miller, individually and as members of a class, Defendants.
Civ. A. Nos. 66-321, 4086-66.
United States District Court N. D. Alabama, W. D.; S. D. Alabama, N. D.
May 27, 1966.
*544 Nicholas deB. Katzenbach, Atty. Gen., John Doar, Asst. Atty. Gen., Washington, D. C., Vernol R. Jansen, Jr., U. S. Atty., Mobile, Ala., for plaintiff.
Frank Mizell, Jr., Montgomery, Ala., Thomas H. Boggs, Circuit Sol., Linden, Ala., Perry Hubbard, Tuscaloosa, Ala., for defendants.
DANIEL HOLCOMBE THOMAS, Chief Judge.

FINDINGS OF FACT
(1) On October 28, 1965, the Attorney General of the United States designated Greene County, Alabama for the appointment of federal examiners pursuant to the Voting Rights Act of 1965.
(2) On August 9, 1965, the Attorney General of the United States designated Marengo County, Alabama for the appointment of federal examiners pursuant to the Voting Rights Act of 1965.
(3) On May 3, 1966, the Attorney General of the United States designated Sumter County, Alabama for the appointment of federal examiners pursuant to the Voting Rights Act of 1965.
(4) On May 3, 1966, the Democratic Party primary elections for federal, state and local officials were held in Greene, Marengo, and Sumter Counties, Alabama.
(5) On that date, the Attorney General of the United States, acting upon authority allegedly derived from Section 8 of the Voting Rights Act of 1965, placed federal observers at the polling places in the aforementioned counties.
(6) The Attorney General sought to have the federal observers view the process wherein a citizen who was unable to mark his ballot for himself received assistance from state election officials in the marking of his ballot.
(7) Authorities responsible for the administration of Alabama laws governing elections in the aforementioned counties consulted with attorneys and, after such consultation, informed the Attorney General that federal observers would not be permitted to observe the election inspectors assisting those who were unable to cast their votes without such assistance.
(8) On May 18, 1966, the United States instituted suit in this court pursuant to the Voting Rights Act of 1965, and seeks injunctive relief that would preclude the defendants from denying the observers access to this procedure of the election.

CONCLUSIONS OF LAW
This court acquires jurisdiction pursuant to Section 12(f) of the Voting Rights Act of 1965 wherein the district courts of the United States are given jurisdiction over proceedings instituted under Section 12. Under Section 12(d), injunctive relief is permitted in order to secure compliance with certain sections of the Voting Rights Act of 1965, namely Section 11(b). That Section provides:
"No person, whether acting under color of law or otherwise, * * * shall intimidate, threaten, or coerce any person for exercising any powers *545 or duties under Section 3(a), 6, 8, 9, 10, or 12(e)."
Section 8 of the Act specifies the functions of a federal observer and is the authoritative basis for the Government's contention that the statute provides for the presence of federal observers when a person who is unable to mark his ballot receives assistance from state election officials.
The defendants have filed motions to dismiss each of these cases and assert the unconstitutionality of Section 8 of the Voting Rights Act of 1965. In State of South Carolina v. Katzenbach, 383 U.S. 301, at 316, 86 S.Ct. 803, at 812, 15 L.Ed.2d 769 (1966) the U. S. Supreme Court specifically stated that judicial review of Section 8 of the act will have to await subsequent litigation.
In United States v. Executive Committee of the Democratic Party of Dallas County, Ala., 254 F.Supp. 537 (S.D.Ala. 1966) this court was called upon to decide the constitutionality of other provisions of the Voting Rights Act which, like Section 8, were expressly excluded from the scope of the United States Supreme Court's judicial review in State of South Carolina v. Katzenbach, supra. In United States v. Executive Committee of the Democratic Party of Dallas County, Ala., supra, this court concluded that the United States Supreme Court had applied traditional concepts relative to the exercise of Congressional power as enumerated in M'Culloch v. Maryland, 4 Wheat. (17 U.S.) 316, 321, 4 L.Ed. 579 (1819) in its upholding of certain sections of the Act in State of South Carolina v. Katzenbach, supra. The sole question in this review is whether or not the power sought to be exercised by the federal observers and the means of securing the exercise of that power are appropriate and plainly adapted to the end of prevention of abridgment of the right to vote as protected by the Fifteenth Amendment.
Turning to the power sought to be exercised and its statutory basis, Section 8 of the Act provides:
"Whenever an examiner is serving under this Act in any political subdivision, the Civil Service Commission may assign, at the request of the Attorney General, one or more persons, who may be officers of the United States, (1) to enter and attend at any place for holding an election in such subdivision for the purpose of observing whether persons who are entitled to vote are being permitted to vote, * * *."
Section 14(c) (1) provides:
"The terms `vote' or `voting' shall include all action necessary to make a vote effective in any primary * * * election, including, but not limited to, * * * other action required by law prerequisite to voting, casting a ballot * * *."
When considering the grant of authority in Section 8 to observe whether persons are being permitted to vote in light of the broad definition of "vote" found in Section 14(c) (1), it would appear that there is statutory authority to authorize the request made by the Attorney General, and this court so finds. Thus, the conflict between assertions of state and federal authority as exist here are cast in the form of a question as to what extent can the state's right to maintain election procedures (i. e. the secrecy of a ballot) be abrogated by Congress acting under authority allegedly derived from the Fifteenth Amendment to the United States Constitution.
In Carrington v. Rash, 380 U.S. 89, at 91, 85 S.Ct. 775, at 777, 13 L.Ed.2d 675 (1964), the U. S. Supreme Court reaffirmed the following language from Pope v. Williams, 193 U.S. 621, at 632, 24 S.Ct. 573, at 575, 48 L.Ed. 817 (1903) when it quoted as follows:
"In other words, the privilege to vote in a state is within the jurisdiction of the state itself, to be exercised as the state may direct, and upon such terms as it may seem proper, provided, of course, no discrimination is made between individuals, in violation of the Federal Constitution."
The Court further stated, "* * * the States have long been held to have broad *546 powers to determine the conditions under which the right of suffrage may be exercised." (Carrington v. Rash, supra, 380 U.S. at 91, 85 S.Ct. at 777). Acting within this sphere of state authority to regulate elections, the Alabama Code provides as follows:
"Every voter in Alabama shall have the right to vote a secret ballot, and that ballot shall be kept secret and inviolate." Title 17, Sec. 156, Code of Alabama (1940) (Recomp.1958).
At Title 17, Section 359, Code of Alabama the procedure for assistance to voters who are unable to read when voting by paper ballot is stated. Title 17, Sec. 107, Code of Alabama, gives the procedure in such an instance when voting is conducted by machine. In essence, the statutes provide that the person who is unable to read or mark his ballot may request assistance and take an oath, attesting to his incapacity, and then the two officials shall proceed to assist the voter.
It therefore appears that the right to a secret ballot provided by the State of Alabama is subject to certain practical limitations where such secrecy is impossible, as in the case of an illiterate asking assistance or a person voting by absentee ballot. However, the fact that the state has recognized exceptions to the right to a secret ballot does not mean that the right is to be loosely protected. It is noteworthy that in no instance does an Alabama citizen lose his right to a secret ballot without action on his part which constitutes intentional relinquishment of that right. Title 17, Sec. 107, 359, Code of Alabama provides that each voter must request that assistance which diminishes the secrecy of his ballot. It therefore appears that the secrecy of a ballot can be compromised provided it is done at the request of the voter.
"* * * (T)he statutory provisions for the preservation of the secrecy of the ballot is for the protection of the voter against the conduct of others, and in no manner is intended as restrictive of any voluntary act of his own." Lett v. Dennis, 221 Ala. 432, 129 So. 33 (1930).
I do not think Section 8 of the Act gives authority to require compulsory diminution of the secrecy of all the ballots, and indeed of those who belong to the class composed of illiterates needing assistance in voting. Simply because many who belong to that class also belong to the class of those who owe their franchise to the Voting Rights Act of 1965, is no justification for permitting federal observers to observe every ballot cast by an illiterate with the assistance of election officials. Requiring members of this class to have their ballot viewed by an agent of the federal government without the voter's express request does not appear to be the exercise of means which are appropriate and plainly adapted to the end of elimination of discrimination in voting.
The secrecy of the ballot is one of the fundamental civil liberties upon which a democracy must rely most heavily in order for it to survive. The compulsory compromise of that secrecy will not be tolerated and any illiterate citizen of this state who prefers to vote only in the presence of state officials shall continue to enjoy that right.
The purpose of federal observers, as stated by one of the sponsors of that portion of the act, is "to observe and report back any corrupt practices which prevent persons certified as eligible voters from casting a ballot and having their votes counted". 111 Cong.Rec. 10637 (Daily Ed. May 19, 1965). In this context, the function of a federal observer appears to be a constitutional exercise of Congress' authority to enforce the Fifteenth Amendment within the standards set by State of South Carolina v. Katzenbach, supra. Recognizing that the presence of federal observers is justifiable under some circumstances and balancing this against the protection of the secrecy of the ballot under state law, this court finds that any illiterate voter may request the presence of a federal observer while he casts his ballot and such *547 request shall be granted by the election officials if such observer is available. It is true that Title 17, Sec. 359, Code of Alabama states that no more than two people can be present during this voting procedure. However, certain state regulatory authority has been supplanted by the Fifteenth Amendment. The Supremacy Clause of the United States Constitution requires that this procedure of Alabama law give way to enforcement of the Voting Rights Act of 1965.

DECREE
The Defendants are to allow federal observers to be present as an illiterate requests assistance in casting his ballot and during the marking of that ballot, provided the illiterate voter requests the presence of said observer.
Inasmuch as the defendants in their pleading and indeed in open court stated that the court's finding would be carried out to the letter without the necessity of an injunction, the court sees no need for an injunction to issue. However, the Court does retain jurisdiction for such further orders as it deems fit.