## PACIFIC EXPRESS COMPANY V. W. F. JONES.

Decided November 19, 1908.

**1.—Carrier—Special Damages—Notice.**

In order to render the carrier liable for special damages for delay or non-delivery, such as loss of profits of a mill kept idle for lack of machinery shipped, the carrier must have notice of the circumstances from which such damages arose at the time of making the contract.

**2.—Same—Cases Distinguished—Burden of Proof.**

Bourland v. C. O. & G. Ry. Co., 99 Texas, 407, and Wells, Fargo & Co. v. Battle, 24 S. W., 353, distinguished as cases of delay by the delivering agent after the property came to his hands for delivery and notice of the special circumstances was given. The burden was on plaintiff to show that the property was so situated and capable of delivery to bring the case within this rule as to notice subsequent to the contract.

**3.—Same—Agency—Notice of Loss.**

The powers of the local agent of an express company extend only to receiving and transmitting goods. He is not presumed to have knowledge of the doings of or control over other agents; and his failure to notify a shipper that an article was lost in transportation would not subject the company to liability for damages by causing delay in duplicating an order for the goods lost.

**4.—Carrier—Special Damages—Expense of Inquiry.**

Freight being shipped to a consignee resident at the place of delivery, the expenses of the owner who had ordered through such consignee in making trips to the place to inquire about the delayed goods were not recoverable as special damages.

**5.—Same—Damages.**

The expense of telephone messages duplicating an order for lost goods constitutes special damage which is not recoverable unless pleaded.

Appeal from the County Court of Harrison County. Tried below before Hon. H. T. Lyttleton.

*F. H. Prendergast,* for appellant.

*Y. D. Harrison,* for appellee.

HODGES, Associate Justice.—Jones, the appellee, owned and was operating a sawmill about ten miles distant from the city of Marshall in the spring of 1907. About the 1st of May of that year a piece of his machinery, called a "stub end," was broken, and it became necessary to procure a new piece in order to continue the operations of his machinery. It was also necessary to close the mill down until the new piece could be procured. According to the findings of the court Jones carried the broken "stub end" to his dealer, the McPhail Hardware Company at Marshall, and requested the latter to order a new piece. The McPhail Hardware Company sent the broken pieces, together with an order, to Walter Conley & Company, of Tyler, for the purpose of having a duplicate made. The latter firm, not being able to furnish the duplicate, ordered the desired article from Benton McMillan at Huntsville. On the 7th day of May, 1907, McMillan delivered the new piece of machinery to the appellant's agent at Huntsville, but said nothing to him about for what purpose it was wanted or what damages might result from any delay in its shipment. At the time of the delivery of the broken pieces to the appellant's agent at Marshall by the McPhail Hardware Company the agent was informed of the character of the machinery delivered, and was told that the mill would remain idle until a new piece could be received in its place. The duplicate piece sent by McMillan to the McPhail Hardware Company appears to have been lost and was never delivered. On the 6th day of May, 1907, inquiry was made by the McPhail Hardware Company of the appellant's agent at Marshall as to whether or not the machinery had arrived, and the agent was also told at that time that the mill had been shut down for the want of the piece of machinery. On the same day Jones, the appellee, called at the office of the express company at Marshall in person, and made a similar inquiry concerning the new piece of machinery, and also told the agent that his mill was shut down and could not be operated until the piece was received. The agent informed Jones that it had not arrived, but probably would be in soon. Jones called at the express office on the 8th, 9th, 11th and 12th days of May thereafter, and at each time told the agent of the company that his mill was closed down and of the damage he was suffering by the delay in receiving the piece of machinery. The

agent informed Jones that he expected the machinery in on the next train, and told him to call again. On the 18th day of May Jones again called at the express office and repeated his inquiries, whereupon the agent suggested that he should have a tracer sent out or a duplicate casting made. On the same day Jones, however, decided to duplicate his order for the casting, which was done through the McPhail Hardware Company by telephone to Walter Conley & Company at Tyler, and this order forwarded to Benton McMillan at Huntsville. However, on the 20th day of May the express company, having concluded that the piece of machinery was lost, ordered another piece from McMillan, which was made and shipped to McPhail Hardware Company at Marshall on the same day the order from Walter Conley & Company was received by McMillan. The piece thus ordered by appellant reached its destination and was delivered to McPhail Hardware Company on the 21st of May. The appellee's order was not filled. Jones did not at any time tell the express agent that the casting was coming from Huntsville, and the agent did not ask where it was coming from. Upon this evidence the court rendered a judgment in favor of Jones for the sum of $200 damages resulting from the delay in the shipment of the piece of machinery, $6 damages for two days' lost time and expenses incurred in making inquiry at the express office, and seventy-five cents, the expense of a telephone message sent from the McPhail Hardware Company to Walter Conley & Company at Tyler for the last order.

Complaint is made that the damages allowed in this case are too remote, and are not such as might reasonably be considered within the contemplation of the parties at the time the contract of carriage was made; and that in the absence of notice such damages can not be recovered. We think the objections here urged must be sustained. It is evident from the undisputed facts that there were three shipments made for the benefit of the appellee. The first consisted of a shipment of the broken pieces from the McPhail Hardware Company to Walter Conley & Company at Tyler; the second, from the latter company to Benton McMillan at Huntsville, and the third, the new casting from McMillan to the McPhail Hardware Company at Marshall. No complaint is made of any delay in any of those shipments except the last. It is conceded that the damages in this case are of such a character that they could not be recovered in the absence of notice given to the appellant; but it is also insisted that such notice was given, and in order to sustain this contention appellee relies upon the communication from Jones to appellant's agent at Marshall after the order was sent to McMillan at Huntsville, and after the first piece was delivered by McMillan to appellant's agent at Huntsville for shipment to Marshall. The undisputed facts show that when McMillan delivered the new piece of machinery to the appellant's agent at Huntsville no notice whatever was given of the use for which it was intended or the damages that might result from delay in its transportation. The general rule is that in order to render a carrier liable for such special damages resulting from a failure or delay in the shipment of freight, notice of the conditions from which they would result should be given the carrier at the time the contract of carriage is made. Missouri, K. & T. Ry. Co. v. Belcher, 88 Texas,

549; Bourland v. Choctaw, O. & G. Ry. Co., 99 Texas, 407; Wells Fargo & Co. v. Battle, 5 Texas Civ. App., 532.

In the Belcher case above cited the court uses the following language: "The rule seems to be settled that plaintiff, in order to recover special damages for breach of a contract, must show that at the date of the contract defendant had notice of the special conditions rendering such damages the natural and probable result of such breach, under circumstances showing that the contract was to some extent based, upon or made with reference to such conditions. Waller v. Midland G. W. Ry., L. R. 4 C. L. Ir., 376; Harvey v. Connecticut & P. R. R. Co., 124 Mass., 421. Various reasons have been assigned for the limitations thus placed upon the right to recover such damages. For instance, it is sometimes said that defendant is entitled to the notice at the time of entering into the contract, so that he may protect himself against such special or extraordinary liability by declining to make the contract, by inserting stipula-- tions protecting himself against such liability, by charging additional compensation to cover the extra risk, or by making immediate extra preparation to guard against the breach; and again, it has been said that plaintiff 'ought not to be allowed to obtain an advantage which he has not paid for.'" It is true that in both the Bourland case and in Wells Fargo & Co. v. Battle the court permitted a recovery of special damages for delay in the delivery of freight upon notice given to the receiving agent after the contract of carriage was made. But it will be observed that such recovery was limited to those damages which accrued by reason of the delay caused by the receiving agent after he received the notice of the consequences of delay in the delivery of the freight. In the Bourland case the court says: "The notice relied on in such cases subsequent to the contract appears to have been given at a time when its effect, if held sufficient, would have been to impose an additional liability, resulting from the contract itself, to that within the contemplation of the parties when they made it. In none of them were the facts like those in the present case, in which the contract to carry to Washita had been fully performed, and the property was at the point of destination, and could have been delivered, when the notice was given. All that remained to be done was to make delivery, and this it was then in the power of the carrier to do at once. It had no right to demand extra compensation for a transportation already performed for making delivery, nor had it the right to refuse or delay delivery because of the conditions of which it then received notice. No extra or unusual preparations were necessary for delivery, or, if it were, the defendant was, at the time, in as good a position to make them as it would have been had the notice been given when the contract was made." And again it is said: "The charge of the trial court, when applied to the evidence, was substantially correct, and stated the rule which we regard as controlling this case. It refers, it is true, to notice given to the agent at Washita before the arrival of the cars containing the cake, and, if there were anything in the case requiring the distinction between notice before arrival and that given while the cars were at Washita, questions might arise which we find it unnecessary to determine at this time. The first notice given was on the very day when the cars reached Washita and were ready for delivery. The charge requires that the freight should have been within

the control of the agent when the facts making the delivery so important were brought to his knowledge, and evidently refers to the one transaction which took place on the 21st of April, and means that the notice then given might have been either before or after the arrival of the cars, so that the agent knew the facts while controlling them." Had it been shown in this case that the failure to deliver the piece of machinery was due to the nonperformance of any duty devolving upon the appellant's agent at Marshall, then, under the rule announced in the language quoted the appellee would have the right to recover special damages. But it is not shown that the freight ever reached Marshall or was under the control of the agent at that place. In the absence of evidence sufficient to establish those facts the notice given to the Marshall agent was not notice to the company.

Counsel for appellee insists that the burden is upon the express company to show affirmatively that the freight did not reach its Marshall office or was not there when Jones gave notice of the damages he was suffering from the delay, and that, it having failed to discharge this burden, we should assume that the machinery had arrived, and was within the control of the agent at that place. To do this would be presuming negligence under conditions unwarranted by law. Courts are not called upon to adopt such extreme measures in order to protect shippers from impositions by carriers. In every instance the shipper has it within his power to protect himself against all damages, both general and special, caused by delays or losses in shipments, by giving notice to the carrier when the contract is made. If he fails to avail himself of this privilege he must suffer the consequences of his own neglect. The carrier has the right to be apprised of the importance of its undertaking and of the consequences that may follow from a failure or delay in the transportation of freight at the time it is called upon to perform the service.

It is also insisted by the appellee that he should recover because of the failure of the appellant to notify him that the piece of machinery was lost. Liability for such failure, and the entire consequences legally following, would be determined by the same rules of law that govern in fixing and measuring the damages that might be recovered for losing the freight. It is not contended that any fraud or deception was practiced by the Marshall agent. We can not assume that he knew that the article was lost; and unless we did, there certainly would be no basis for a judgment for special damages on account of his failure to notify Jones that such was the case. There is nothing in the record that tends to show that the agent at Marshall was more than the local agent charged merely with the duty of receiving and transmitting goods delivered to him for shipment over the appellant's line, and of receiving and delivering goods which were consigned to parties at Marshall. We can not assume that he had any control over any of the other agents in the employ of the appellant at other points on its line.

The item of $6 allowed for the time and expense lost and incurred by the appellee in making successive calls for the freight at the appellant's office can not be allowed, for the additional reason that the evidence fails to show that any notice of the value of that time or the attendant expense or the distance that would have to be traveled in mak-

ing calls was communicated to the appellant's agent. On the contrary, it appears from the pleadings of the appellee himself that the freight was consigned to the McPhail Hardware Company, whose place of business was in Marshall, and who could probably call without any material loss of time. The item of seventy-five cents does not appear to have been pleaded by the appellee. While it is among the items in the account, yet it is not alleged in the pleading that such expense was incurred. City of Bowling Green v. Bowling Green Gas Co., 112 S. W., 917.

We think the judgment of the trial court should be reversed and judgment here rendered in favor of the appellant. The judgment is accordingly reversed and rendered.

*Reversed and rendered.*