PICKERING MFG. CO. v. GORDON.
(No. 6515.)

(Court of Civil Appeals of Texas. Galveston. May 5, 1914.)

1. LIMITATION OF ACTIONS (§ 121*) — COMMENCEMENT OF ACTIONS—STOPPING OF RUNNING OF LIMITATIONS.

Where a suit was brought against a defendant, described as a foreign corporation, with which plaintiff had made the contract sued on, and defendant filed an answer in the corporate name, and subsequently an individual appeared and answered, alleging that she did business in the corporate name and that there was in fact no corporation and that she was the party with whom plaintiff had contracted, the commencement of the action stopped the running of limitations against the cause of action relied on.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 537, 540; Dec. Dig. § 121.*]

2. SALES (§ 418*) — BREACH OF CONTRACT — SPECIAL DAMAGES.

Where a buyer of machinery for a manufacturing plant rented a building for the machinery and plant and employed employés in reliance on a prompt delivery of the machinery and demanded damages for rental and wages paid pending delivery, which was delayed by the seller, the damages demanded were special, and to recover the buyer must prove that it was reasonably within the contemplation of the parties at the time of the making of the order that the damages would likely result from the seller's delay.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

Appeal from Jefferson County Court; R. W. Wilson, Judge.

Action by W. D. Gordon against the Pickering Manufacturing Company. From a judgment for plaintiff, defendant appeals. Reversed and rendered for defendant.

See, also, 166 S. W. 899.

Crook, Lord, Lawhon & Ney, of Beaumont, for appellant. Thos. J. Baten and W. D. Gordon, both of Beaumont, for appellee.

McMEANS, J. On September 8, 1908, W. D. Gordon filed this suit against the Pickering Manufacturing Company, alleging that the defendant was a private corporation doing business in the state of Pennsylvania; that on or about the 10th day of July, 1908, for the purpose of establishing a plant in Houston, Tex., for the manufacture of brushes, he placed an order with the defendant for prompt shipment to Houston of about $1,200 worth of machinery necessary to the equipment of a manufacturing plant; that the defendant accepted the order and undertook to fill the same expeditiously; that, relying upon the defendant's prompt, expeditious filling of said order, the plaintiff rented a building in the city of Houston to accommodate said machinery, at a reasonable rental value of $100 per month; that upon defendant's representation that the machinery would be promptly and expeditiously forwarded plaintiff incurred additional necessary expenses in salaries to employés for the management and operation of the plant of approximately $300 per month, and sundry incidental expenses of approximately $75 per month. He then alleged that defendant had breached the contract, and sought damages therefor in the sum of $292, which amount he alleged defendant had on deposit in the Gulf National Bank of Beaumont, which amount was seized by a writ of garnishment.

On January 4, 1909, the Pickering Manufacturing Company filed its answer, consisting of a general demurrer and general denial. Subsequently it filed its first amended original answer, but this answer is not brought up with the record, and its allegations are not shown.

On January 16, 1913, more than five years after the filing of the original petition, plaintiff filed his first amended original petition, in which he alleged:

"That he instituted this suit against the Pickering Manufacturing Company, who by answers filed in the case is now shown to be an alias under which one E. A. Pickering, the sole and only party at interest, was doing business. That his original petition proceeded upon the supposition that the Pickering Manufacturing Company was a private corporation, and that, being so sued, said defendant, now known as Emaline A. Pickering, answered said suit in the capacity in which it was brought on the 4th day of January, 1909. That subsequently, on the 14th day of December, 1910, said Pickering Manufacturing Company (identical with Emaline A. Pickering) filed in her own proper person her original amended answer to this suit. That from the pleadings now on file, it appears that the Pickering Manufacturing Company is the alias name of Emaline A. Pickering, and that this name, as well as what she now affirms to be her correct name, are hereby retained for the purpose of proceeding against her in this suit."

Plaintiff then proceeded to allege his cause of action as in the original petition, but with greater particularity alleged the damages suffered by him by reason of defendant's breach, as follows:

"He rented a building to accommodate said machinery and plant at the reasonable rental price of $100 per month. That, relying upon the defendant's prompt and reasonable execution of said contract of shipping said machinery, plaintiff employed the following necessary employés for the management and operation of said plant, viz., a manager at the price of

$150 per month, and two brush manufacturing employés at the price of $75 per month each, which were necessary expenses in the premises and which the defendant well knew. That plaintiff had to incur additional expenses, such as to make electric power connections, and other incidental expenses such as telephone, electric lights, etc., aggregating about $75 per month, all of which expenses were in contemplation of the parties, plaintiff and defendant, at the time of placing and acceptance of said order and ever since then."

The amended petition concludes thus:

"And because the defendant is now personally before the court, the plaintiff asks judgment against defendant under each and all of her aliases in the full sum of $995, with all costs of suit, and he prays for general relief."

After the filing of this amendment, and upon the same day, the defendant Emaline A. Pickering, describing herself as "doing business under the name of Pickering Mfg. Co.," obtained leave of the court to file, and did file, her second amended original answer in lieu of her first amended answer filed December 4, 1910, containing a general demurrer, special exceptions to and general denial of the allegations of plaintiff's amended petition, and a plea of the two and four years' statute of limitations. A trial before a jury resulted in a verdict and judgment for plaintiff for $750, and defendant has appealed.

By her first assignment of error appellant complains of the action of the court in overruling her special exception to plaintiff's amended petition, which in effect was that the petition shows that plaintiff's cause of action arose between July 10 and October 1, 1908, and the defendant was not sought to be held liable until the filing of the amended petition on January 16, 1913, and that his cause of action was barred by the two and four years' statute of limitations.

By her second assignment she complains that the court erred in not instructing a verdict in her favor for the reason that the undisputed evidence shows that plaintiff's cause of action is barred by the two and four years' statute of limitations.

[1] The assignments cannot be sustained. According to the allegations of plaintiff's original and amended petitions, his cause of action arose prior to September 8, 1908, the time the suit was filed. His amended petition was filed more than five years afterward. In the meantime, however, on January 4, 1909, the Pickering Manufacturing Company, which is the name under which appellant was doing business, filed an answer in the case, and later an amended answer was filed. This amendment was not brought up with the record, and we are not apprised, by an inspection of it, what allegations it contained or defenses were asserted by it; but in the court's general charge we find a reference to it in the following language:

"It appears that the Pickering Manufacturing Company, the defendant, answered unto that name as sued, by general denial and plea of net guilty, on the 4th day of January, 1909, and on the 14th day of December, 1910, Mrs. Emaline A. Pickering appeared and filed an answer in which she alleged that the Pickering Manufacturing Company was a name under which she did business and that she was the only party at interest."

We assume that the court had the answer before it when the charge was prepared, and that the statement contained in the charge is true. No complaint is made by appellant attacking its correctness. It is shown that there was no such corporation as the Pickering Manufacturing Company, but that Emaline A. Pickering was doing business under that name. There is no question that it was the individual doing business by that name, and not a corporation of that name, that received and accepted plaintiff's order and agreed to fill it. In other words, the contract made by plaintiff was with Mrs. Pickering and not with a corporation. When the original answer was filed, no attempt was made to correct the misnomer. The firm of attorneys which filed the original answer in behalf of the Pickering Manufacturing Company is the same firm that filed the first and second amended answers for Mrs. Pickering. The filing of the original answer in the name of the Pickering Manufacturing Company, under which name Mrs. Pickering was doing business, was, under the circumstances stated, an answer to the merits by her. We cannot distinguish this case in its facts from Railway v. Graham, 12 Tex. Civ. App. 569, 34 S. W. 135, and upon the authority of that case and the cases therein cited we hold that under the circumstances stated the filing of the original petition stopped the running of limitations against plaintiff's cause of action; and the assignments are overruled.

[2] By the fifth assignment of error appellant complains of the refusal of the court to give her special charge instructing a verdict in her favor for the reason, as asserted in her proposition, that the cause of action asserted by plaintiff was in the nature of special damages caused by an alleged breach, on the part of appellant, of a contract to promptly and expeditiously ship to plaintiff certain machinery; and that in order to recover such damages it was necessary for appellee to prove that at the time of the contract of sale he gave defendant notice that he would sustain such special damages in case of its breach and to show that the contract was made, at least in part, with reference to such special conditions.

The plaintiff testified that he sent two Germans, by the names of Adolph Nissel and George Zehetner, who were expert brush makers and familiar with the necessary machinery for the manufacture of brushes, North during the summer of 1908 to purchase the necessary machinery for the equipment of his plant; that about 10 days after they left he received a letter from the Pickering Manufacturing Company, bearing date of July 10, 1908. This letter states that the Pickering Manufacturing Company had been called upon by Nissel and Zehetner and had

been given two orders for machinery, one order of $850 for a boring lathe and the other order for sundry machinery and tools amounting to $325, which last order would be entitled to cash discount of 10 per cent. and requested the plaintiff to confirm the order. The plaintiff answered this letter on July 13, 1908, in which he confirmed the orders given by Nissel and Zehetner. In neither of these communications was anything said about the date of shipment nor as to any arrangements the plaintiff had made for the reception of the machinery or the installation of the plant. The plaintiff testified that both these Germans were in Europe, and he was therefore unable to secure their testimony; that he expected the machinery to be shipped promptly, at least within reasonable time, and testified as to the renting of the building, the employment of a manager, and the employment of the two Germans as brush makers and the installation of electric power, lights, telephones, etc., substantially as alleged in his petition; that he commenced paying these expenses before the 1st of August and continued to pay them until October 15, 1908, when the plant was actually installed. He testified as to the time it would require machinery to be shipped from Philadelphia to Houston, and that he expected the machinery all the time from the latter part of July up to September 7th. There was no testimony introduced by the plaintiff tending to show that the defendant was given notice at the time the contract was made that such damages would follow in case of a breach.

Anton H. Nolde testified for the defendant and stated that he was manager of the Pickering Manufacturing Company and he represented the Pickering Manufacturing Company in taking orders from Nissel and Zehetner for the machinery for W. D. Gordon or the Houston Brush Manufacturing Company. He introduced in evidence the two orders, both dated July 10, 1908. Both orders contained simply a request on the part of Nissel and Zehetner to ship the machinery named and contained statements of the terms of payment. The witness Nolde further testified that there was no time of shipment mentioned; that it was understood that the machinery was to be shipped as soon as possible; that these parties did not tell him when they intended to put the factory in operation or when the machinery would be needed, and no time of shipment was mentioned or suggested; that nothing was said about renting a building and that he knew nothing about what arrangements were made for their plant; that there was nothing said about employment of men pending the arrival of the machinery and that these questions were not discussed; that the first order was filled in full, and the order for the boring lathe was canceled by W. D. Gordon on September 7, 1908. He testified that the machinery ordered was not in stock and had to be manufactured, and that this fact was known to Nissel and Zehetner.

The damages claimed by appellee were special damages, and to entitle him to a recovery thereof it was incumbent upon him to prove facts from which it would appear that it was reasonably within the contemplation of the parties, at the time appellee made the order and defendant accepted it, that the damages sued for would likely result as a result of appellant's default. Railway v. Belcher, 89 Tex. 428, 35 S. W. 6; Smelting Co. v. Compress Co., 72 Ark. 275, 79 S. W. 1052; Express Co. v. Darnell, 62 Tex. 639; Express Co. v. Thompson, 53 Tex. Civ. App. 515, 116 S. W. 607; Express Co. v. Jones, 52 Tex. Civ. App. 367, 113 S. W. 952.

In Railway v. Belcher, supra, the Supreme Court says:

"The rule seems to be settled that plaintiff, in order to recover special damages for breach of a contract, must show that at the date of the contract defendant had notice of the special conditions rendering such damages the natural and probable result of such breach, under circumstances showing that the contract was to some extent based upon or made with reference to such conditions."

Appellee failed to introduce any evidence tending to show that, under the rule stated, the appellant was liable to him for the damages sued for, and therefore the court should have given the special charge requested by appellant, instructing a verdict in her favor. The judgment of the court below is reversed, and judgment here rendered for appellant.

Reversed and rendered.