391 P.2d 416

**STATE of New Mexico ex rel. Norman PALMER, Petitioner,**

**v.**

**Alberta MILLER, Secretary of State, State of New Mexico, Respondent.**

**No. 7608.**

Supreme Court of New Mexico.

April 13, 1964.

**130**

Harry Graham Balter, Los Angeles, Cal., Paul A. Phillips, Albuquerque, for petitioner.

Earl E. Hartley, Atty. Gen., Oliver E. Payne, Norman S. Thayer, Asst. Attys. Gen., Santa Fe, for respondent.

PER CURIAM:

The petitioner seeks to have his name placed on the primary ballot of the Democratic party as a candidate for the office of United States Senator at the primary election to be held on May 5, 1964.

To accomplish this end petitioner chose to proceed under the provisions of Chap. 317, § 7, N.M.S.L.1963 (§ 3–11–7, N.M.S.A. 1953, pocket supp.) whereby he could have his name included as a candidate by the timely filing of a declaration of candidacy together with a nominating petition (the forms are specified in the section) signed by qualified electors who are members of the Democratic party, "resident in one-half [½] of the counties in the state equal to at least three per cent [3%] of the votes cast for the office for which said petition is (was) circulated."

Upon filing of the declaration of candidacy and nominating petitions with respondent Secretary of State, petitioner was advised that his name would not be placed on the primary ballot because "the number of signatures required by law" were not contained in the petition. To reverse this decision of the respondent, and to procure an order directing the respondent to place petitioner's name on the primary ballot a writ of mandamus is sought. Pursuant to the original jurisdiction vested in this court under Art. VI, § 3, N.M.Const., we issued our alternative writ ordering respondent to place petitioner's name on the primary ballot as requested, or show cause why she had not done so. Respondent has filed her return to our order; the matter has been

briefed and argued and is now ripe for decision which, because of the exigencies of time, must not be delayed.

Although numerous issues of fact and law are raised by respondent's answer, at the time of oral argument a stipulation was filed removing all questions of fact and leaving only two legal problems for determination.

From the stipulation it is clear, and upon oral argument it was agreed, that sufficient names are signed to the nominating petition to require petitioner's name to be listed if § 3–11–7, supra, means 3% of the votes cast for the Democratic candidate, and not for all candidates, in the 1958 general election and not the 1960 general election.

We first consider whether the 3% requirement applies to votes cast only for the Democratic (party of petitioner) candidate as claimed by petitioner. For ease of understanding we set forth the pertinent language:

"* * * The petition shall be signed by a number of qualified electors resident in one-half [½] of the counties in the state equal to at least three per cent [3%] of the votes cast for the office for which said petition is being circulated, at the last general election held for such office, in each of the counties wherein such petition is circulated."

It is petitioner's position that "three per cent [3%] of the votes cast for the office * * * at the last general election" must be read to mean three per cent of the votes cast for the candidate of petitioner's party for such office at that election.

Generally speaking, it is petitioner's position that since the section involved·is a part of a primary law it should apply to political parties and that the legislature could not have intended to refer to all votes cast; that the history of changes in methods of nominating candidates for public office in New Mexico indicates an intention to only refer to the vote of the political party; that the accepted rules of statutory construction require the interpretation placed on the words by petitioner that any other view would result in a strained and unreasonable meaning. Some additional contentions were also advanced in the briefs and on oral argument.

Historically, we find that New Mexico selected its candidates for public office through the party convention system from statehood until,.in a special session in 1938, the state's first "Primary Election Code" was adopted. This court had occasion to consider this legislation in State ex rel. Van Schoyck v. Board of County Com'rs of Lincoln County, 46 N.M. 472, 131 P.2d 278, where we said:

"We may notice judicially that one of the chief reasons for adopting the

primary system of making nominations was to take the matter out of the hands of party conventions and committees and give it directly into the hands of the qualified electors of the parties participating therein. * * *"

By Chap. 123, N.M.S.L.1949, the legislature adopted as part of the nominating procedure, a pre-primary convention applicable to nominations for candidates for United States Senator, United States Representatives in Congress, Presidential Electors, and all Elective State Officers. Certain amendments were incorporated by Chap. 180, N.M.S.L.1951. In 1955, by Chap. 218, N.M.S.L.1955, the pre-primary convention was abolished and the direct primary was again embraced as the method for selection of nominees for all elective offices in the state. The next material change in method of nomination was accomplished when, in 1963, a pre-primary convention together with a primary election was again adopted by Chap. 317, N.M.S.L.1963.

Does this history of our legislation point the way to an answer? If it does, it escapes us. Since 1938 we have had either a direct primary or a pre-primary convention and a direct primary. We have never returned to the exclusive convention system. However, that there has been something less than complete satisfaction with the methods undertaken since abandoning the convention system, would seem to be apparent. We find nothing in the changes from convention system to direct primary, to pre-primary convention plus a primary, back to a direct primary, and once more back to a pre-primary convention plus a primary, which we consider as clearly indicative that the 3% of the vote referred to in § 3–11–7, supra, was intended by the legislature to refer to 3% of the vote by members of petitioner's party and not to 3% of the total vote. True, nominating is done by political party, but we see nothing in this fact which would militate against a standard other than party vote for determining the number of signatures to be required to place a name on a primary ballot. The formula stated is nothing more nor less than a basis for arriving at a number, and we perceive nothing shocking or inherently unreasonable in the method chosen.

We note the rules of statutory construction followed by this court for many years. Without restating them, we direct particular attention to In re Vigil's Estate, 38 N.M. 383, 34 P.2d 667, 93 A.L.R. 1506; Montoya v. McManus, 68 N.M. 381, 362 P.2d 771; Bradbury & Stamm Construction Co., Inc. v. Bureau of Revenue, 70 N.M. 226, 372 P.2d 808. We also note rules as announced in 2 Sutherland, Statutory Construction (3rd Ed.) §§ 4924, 5201, 5203.

In addition, we accept as correct the statement that election laws should be liberally construed so as to accomplish their

purpose, and that technicalities should not be permitted to deprive voters of their franchise or render an election void. Kilmurray v. Gilfert, 10 N.J. 435, 91 A.2d 865; Wene v. Meyner, 13 N.J. 185, 98 A.2d 573.

In the light of these rules and in all reason, can it be stated that the legislature intended that the number of names signed on a petition should equal 3% of the vote cast for a particular party candidate for an office, and not 3% of the vote cast for all candidates for the office? Try as we will, we cannot see how under any recognized rule of construction we would be justified in reading into the section the words that are necessary to accomplish this end. We do not assert that under proper circumstances and in a proper case, words may not be read into a statute so as to accomplish a manifest legislative intent where the omission is palpable, and the omitted words indicated by the context, or to prevent a statute from being absurd. In Moruzzi v. Federal Life & Casualty Co., 42 N.M. 35, 75 P.2d 320, 115 A.L.R. 407, it was recognized that this could be done.

■ Our difficulty lies in the fact that in the section under consideration we see nothing pointing unerringly to a legislative intent to say anything different than was said. It is true that the law is a primary election law applicable in the nominating of party candidates, and that the number of signers required could have been fixed at some percentage of those who voted for the party candidate at the last general election, or even at an earlier primary election. However, this is not what the legislature provided. The number required is a percentage of the vote for the office, at the last general election which to our minds is clearly the total vote for all candidates. At a general election all candidates for any given office oppose all other candidates for that office, and "[3%] of the votes cast for the office * * * at the last general election * * *" can mean nothing except 3% of the vote for all candidates.

At oral argument petitioner conceded that if the act had required petitions equal to 6% of the total vote cast for the Democratic candidate, such a provision would not be objectionable. For more than thirty years the Democratic candidate has prevailed in every senatorial election in this state. This being true, 6% of the vote cast for the Democratic candidate would generally be a larger figure than 3% of the vote for all candidates. Admittedly, in certain counties where the Republican candidate may have obtained a majority, this would not be true. However, as a broad generalization, it is certainly a demonstrable fact. As we view the language used by the legislature, there is very little room for construction. "[3%] of the votes cast for the office * * * at the last general election * * *" is reasonably clear language.

**134**

Petitioner argues that votes are not cast for the "office" but rather for the "candidates for the office." Conceding that this may be technically true, it is nevertheless equally true that the total of all votes cast for all candidates for the office, are the votes cast for the "office." Compare, Bridges v. McCorvey, 254 Ala. 677, 49 So.2d 546.

As we view the situation, we would be guilty of the grossest type of judicial legislation if in the instant case we were to add the words sought by petitioner into the section, thereby substantially reducing the required number of signatures fixed specifically by the legislature. Compare, Burch v. Foy, 62 N.M. 219, 308 P.2d 199. We must assume that the legislature intended the words used by it to mean what those words are generally understood to mean, and that it used the words advisedly to express exactly what it had in mind, unless it clearly appears that such assumption is unfounded. Albuquerque Lumber Company v. Bureau of Revenue, 42 N.M. 58, 75 P.2d 334; In re Cox' Estate, 57 N.M. 543, 260 P.2d 909.

We arrive at our conclusion without reference to the earlier pre-primary convention law repealed in 1955. However, we note that in that law the percentage of signatures required was a number equal to "(2%) of the votes cast *by his political party* for the office * * * at the last general elec-tion * * *." Except for the change in the percentage figure and the omission of the italicized words the particular language is identical to that found in § 3–11–7, supra. To say the least, the earlier law demonstrates the ease with which the section could have expressed a requirement as contended by petitioner. Compare Granito v. Grace, 56 N.M. 652, 248 P.2d 210.

We agree with petitioner that if the literal interpretation which we adopt would result in defeat of the act as unconstitutional, such fact would be a strong argument supporting petitioner's position. N.L.R.B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Conley v. City of Shreveport, 216 La. 78, 43 So.2d 223. However, we do *not see any constitutional question as the* section is interpreted by us, nor is this issue raised by the pleadings.

Any unanswered arguments are not considered by us to compel a different conclusion than that reached above, or to require discussion.

Inasmuch as under the stipulation petitioner has agreed that if the total vote is the criteria upon which the percentage *is* required to be figured, his petitions are insufficient, no discussion of the additional equally interesting and perplexing problem of whether the 1958 or 1960 election controlled, is required.

It follows from what has been said that the writ heretofore issued should be discharged forthwith.

It is so ordered.

COMPTON, C. J., having recused himself, not participating.