# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:** _____

**Filing Date:  February 6, 2017**

**NO.  S-1-SC-36030**

**DAVID G. CRUM,**

Plaintiff-Appellant,

v.

**DIANNA J. DURAN, New Mexico Secretary of State, MAGGIE TOULOUSE OLIVER, Bernalillo County Clerk, REPUBLICAN PARTY OF NEW MEXICO, and DEMOCRATIC PARTY OF NEW MEXICO,**

Defendants-Appellees,

and

**STATE OF NEW MEXICO, ex rel. HECTOR BALDERAS, Attorney General,**

Intervenor-Appellee.

**CERTIFICATION FROM THE NEW MEXICO COURT OF APPEALS**
**Denise Barela-Shepherd, District Judge**

J. Edward Hollington & Associates, P.A.
J. Edward Hollington
Albuquerque, NM

for Appellant

Holland & Hart, L.L.P.
John C. Anderson
Larry J. Montano
Santa Fe, NM

for Appellee Republican Party of New Mexico


Hector H. Balderas, Attorney General
Nicholas M. Sydow, Assistant Attorney General
Santa Fe, NM

for Intervenor

**OPINION**

**CHÁVEZ, Justice.**

{1}     Petitioner David Crum is a resident of Albuquerque, Bernalillo County, New Mexico and is registered to vote in New Mexico as a qualified voter who declines to designate or state his political party affiliation (DTS).  He sought to vote during the 2014 primary election by selecting either a Democratic or a Republican ballot without having to amend his voter registration.  Crum was not permitted to vote during the June 3, 2014 primary election because he was not registered as either a Democrat or a Republican[1] on or before May 6, 2014.  *See* NMSA 1978, § 1-4-5.1(F) (2007) (requiring voters to register at least twenty-eight days before an election to be eligible to vote during that election).  Under New Mexico's closed primary election system, a voter who wants to vote during the primary election must be affiliated with a major political party, *see* NMSA 1978, § 1-12-7(B) (2003), and can only vote for candidates of a party which is designated on the voter's current voter registration certificate, *see* NMSA 1978, §1-12-7(C) (2003).

{2}     Crum contends that the Free and Open Clause of Article II, Section 8 of the

---

[1]The Democratic and Republican Parties were the only major political parties in New Mexico for the 2014 election. *See* NMSA 1978, § 1-7-7(A) (2011) (defining "major political party" under the Election Code); www.sos.state.nm.us/Elections_Data/NM_Political_Parties.aspx (last accessed January 30, 2017).

New Mexico Constitution entitles him to vote during primary elections without registering with a major political party because he is a qualified voter under Article VII, Section 1. We disagree. Although the Free and Open Clause is intended to promote voter participation during elections, the Legislature has the constitutional power to enact laws that "secure the secrecy of the ballot and the purity of elections and guard against the abuse of [the] elective franchise." N.M. Const. art. VII, § 1(B) (2014). Requiring voters to designate their affiliation with a major political party at least twenty-eight days before the primary election, and only allowing voters to vote for candidates of a party which is designated on their voter registration, are reasonably modest burdens which further the State's interests in securing the purity of and efficiently administering primary elections. We therefore affirm the district court's grant of the motion to dismiss Crum's complaint for failing to state a claim upon which relief could be granted.

**I.      DISCUSSION**

{3}      Crum sued the Secretary of State and the Bernalillo County Clerk (Defendants), seeking an injunction to enjoin them from prohibiting DTS voters from voting during the primary election. The New Mexico Attorney General intervened on behalf of the State. The district court ordered that the Democratic Party of New Mexico (DPNM)

2

and the Republican Party of New Mexico (RPNM), New Mexico's two major political parties, should be joined as party defendants under Rule 1-019 NMRA. Only RPNM entered an appearance. RPNM filed a motion to dismiss Crum's lawsuit for failure to state a claim under Rule 1-012(B)(6) NMRA, based on the contention that allowing DTS voters to vote in the primary election without designating a major political party would unconstitutionally infringe on RPNM's freedom of association.

{4} The district court granted RPNM's motion to dismiss, concluding that the Legislature had the authority to enact Section 1-12-7(B) and (C) under its manner, time, and place of voting power in the second paragraph of Article VII, Section 1 of the New Mexico Constitution. The district court also found that the requirement to affiliate protects political parties' freedom of association. Crum timely appealed the district court's decision to the Court of Appeals, which then certified the case to this Court pursuant to Rule 12-606 NMRA and NMSA 1978, Section 34-5-14(C) (1972). *Crum v. Duran*, No. 34,586, order of certification at 1-5 (N.M. Ct. App. Aug. 8, 2016) (non-precedential).

{5} Whether New Mexico's closed primary system violates Article II, Section 8 and Article VII, Section 1 is a question of statutory and constitutional interpretation which we review de novo. *Tri-State Generation & Transmission Ass'n, Inc. v.*

*D'Antonio*, 2012-NMSC-039, ¶ 11, 289 P.3d 1232. An appeal of an order dismissing a case under Rule 1-012(B)(6) is also reviewed de novo with the reviewing court accepting "all well-pleaded factual allegations as true and determin[ing] whether the plaintiff might prevail under any state[ment] of facts provable under the claim." *Sambrano v. Savage Arms, Inc.*, 2014-NMCA-113, ¶ 4, 338 P.3d 103 (internal quotation marks and citation omitted).

**A.	The Free and Open Clause Provides a Broad Protection of the Right to Vote; However, the Legislature May Constitutionally Impose Safeguards to Protect the Integrity of Elections**

{6}	Article II, Section 8 of the New Mexico Constitution provides that "[a]ll elections shall be free and open, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." Crum contends that the Free and Open Clause requires all elections, including primary elections, to be free and open to all voters who meet the age, residency, and competency qualifications in the first paragraph of Article VII, Section 1.[2]

{7}	The Free and Open Clause is intended to promote—not restrict—citizen

---

[2]The 2008, 2010, and 2014 amendments to Article VII, Section 1 were compiled in 2016 following our decision in *State ex rel. League of Women Voters of New Mexico v. Advisory Committee to the New Mexico Compilation Commission*, No. S-1-SC-35524, order at 1-2 (N.M. Sup. Ct. Sept. 21, 2016) (non-precedential); N.M. Const., art. VII, § 1 (2014) (Compiler's Note).

4

participation in New Mexico elections. *State ex rel. Walker v. Bridges*, 1921-NMSC-041, ¶ 8, 27 N.M. 169, 199 P. 370 (clarifying that a citizen's supreme right is to vote in public elections, and therefore election regulations should be construed in favor of a citizen's right to vote). Whether the Free and Open Clause of Article II, Section 8 was intended to apply to primary elections is unclear because at the time of the adoption of the New Mexico Constitution on January 21, 1911, primary elections did not exist in New Mexico. *See State ex rel. Palmer v. Miller*, 1964-NMSC-072, ¶¶ 9-10, 74 N.M. 129, 391 P.2d 416 (per curiam) (explaining that New Mexico's first Primary Election Code was adopted in 1938 to take political party nominations away from conventions and give the power directly to qualified voters of those parties).

{8} What existed even before the adoption of the Free and Open Clause is the requirement that voters officially document their qualifications to vote either by registration or affidavit. *See Bridges*, 1921-NMSC-041, ¶¶ 9-11 (citing registration requirements that existed before the New Mexico Constitution's enactment, which required qualified voters to either register or demonstrate by affidavit, and corroborate by two qualified voters, that the affiant was a qualified voter). At the adoption of Article VII, Section 1, the Legislature's authority to require qualified

voters to register to vote became a constitutional power.[3] Article VII, Section 1 also empowers the Legislature to "enact such laws as will secure the secrecy of the ballot and the purity of elections and guard against the abuse of [the] elective franchise." N.M. Const. art. VII, § 1(B) (2014).

{9} In *Preisler v. Calcaterra*, 243 S.W.2d 62, 64 (Mo. 1951) (en banc), the Missouri Supreme Court interpreted a substantively identical Free and Open Clause to that of New Mexico to mean that "every qualified voter may freely exercise the right to . . . vote without restraint or coercion of any kind and that his [or her] vote, when cast, shall have the same influence as that of any other voter." (internal quotation marks and citation omitted). However, in an earlier case, the Missouri Supreme Court had also acknowledged "[t]hat all elections shall be 'free and open' does not mean that there cannot be reasonable regulations of elections in the interest of good citizenship and honest government." *State ex rel. Dunn v. Coburn*, 168 S.W. 956, 958 (Mo. 1914) (in banc). The United States Supreme Court has also held that the constitutional rights to vote in any manner and to associate for political purposes

---

[3]The Legislature's power appeared in the second paragraph of Article VII, Section 1. In a recent amendment, New Mexico voters reiterated the Legislature's power to require voter registration by stating that qualified voters are "subject to residency and registration requirements provided by law." N.M. Const. art. VII, § 1(A) (2014).

6

are not absolute. *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). Although state legislatures cannot unduly infringe on a voter's right to vote, *Richardson v. State Board of Elections*, 697 F. Supp. 295, 297 (W.D. Ky. 1988), legislatures may reasonably regulate elections and impose voter qualifications. *Carrington v. Rash*, 380 U.S. 89, 91 (1965) ("There can be no doubt either of the historic function of the States to establish, on a nondiscriminatory basis, and in accordance with the Constitution, other qualifications for the exercise of the franchise. Indeed, (t)he States have long been held to have broad powers to determine the conditions under which the right of suffrage may be exercised." (alteration in original) (internal quotation marks and citations omitted)).

{10} When a court reviews a challenge to a state election law, it must weigh the asserted injury the plaintiff seeks to vindicate against "the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick*, 504 U.S. at 434 (internal quotation marks and citations omitted). "If a statute imposes only modest burdens, . . . then the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions on election procedures." *Wash. State Grange v. Wash. State Republican*

*Party*, 552 U.S. 442, 452 (2008) (internal quotation marks and citation omitted). " '[E]venhanded restrictions that protect the integrity and reliability of the electoral process itself' are not invidious." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 189-90 (2008) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983)).

{11}     In this case, the Legislature requires a voter who wants to vote during the primary election to be affiliated with a major political party, Section 1-12-7(B), and prohibits the voter from voting for any candidate of a party who is not designated on the voter's current voter registration, Section 1-12-7(C).  During the 2014 primary election, there were only two major parties:  Democratic and Republican.  Registered Democrats could only vote for democratic candidates, registered Republicans could only vote for republican candidates, and no other registered voters could vote in the primary election.  A qualified voter who wishes to vote in a primary election may register with a major political party by delivering or mailing a certificate of registration twenty-eight days before the election.  Section 1-4-5.1(F).  With respect to the 2014 primary election, an unregistered qualified voter could have registered as either a Democrat or a Republican no later than May 6, 2014, which would have been twenty-eight days before the June 3, 2014 primary election.  *See* NMSA 1978, § 1-4-8(A) (2008).  Similarly, a registered qualified voter—regardless of political party

8

affiliation or DTS status—could have changed his or her certificate of registration to register as either a Democrat or a Republican as late as May 6, 2014. *Id.* The qualified voter could then file a new certificate of registration as early as the Monday following the primary election. Section 1-4-8(B).

{12} The stated purpose of the Election Code, and thus the preelection registration requirement, includes securing the purity of elections and providing for their efficient administration. NMSA 1978, § 1-1-1.1 (1979). The controlling question before us is whether requiring qualified voters to register with a political party that is participating in the primary election, at least twenty-eight days before the primary election, is a reasonably modest burden that furthers the State's interest in securing the purity of elections and efficiently administering them. For the following reasons, we conclude that it is.

{13} Generally, "registering as a member of a political party is not particularly burdensome, and it is a minimal demonstration by the voter that he [or she] has some commitment to the party in whose primary he [or she] wishes to participate." *Ziskis v. Symington*, 47 F.3d 1004, 1006 (9th Cir. 1995) (internal quotation marks and citation omitted). Not only is this burden minimal, but "[s]tates have valid and sufficient interests in providing for *some* period of time—prior to an election—in

9

order to prepare adequate voter records and protect its electoral processes from possible frauds." *Marston v. Lewis*, 410 U.S. 679, 680 (1973) (per curiam) (emphasis added). "The registration laws are designed to settle beforehand the question as to who is eligible to vote at any given election [so that] the turmoil and inconvenience of controversies about the qualifications of voters at the polls on election day are eliminated." *Bridges*, 1921-NMSC-041, ¶ 8.

{14}     In *Rosario v. Rockefeller*, the United States Supreme Court analyzed a registration requirement that voters claimed abridged their right to vote in a primary election. 410 U.S. 752, 756 (1973). At issue in *Rosario* was the constitutionality of a New York state election law that required voters to register with a political party at least thirty days before the previous general election to be able to participate in the state's subsequent closed primary election. *Id.* at 760. Under the New York scheme, voters had to be registered approximately eight months before a presidential primary election and eleven months before a non-presidential primary election to participate in the primary. *Id.* at 760. The Court held that this registration requirement did not disenfranchise the voters because it merely provided a deadline for registering with which the voters could have complied to exercise their right to vote. *See id.* at 757-58. The *Rosario* Court noted that the voters could vote in a different political party

10

primary election every year as long as they were properly registered. *Id.* at 759. The Court also held that the registration deadline was not too onerous because (1) states are "justified in imposing some reasonable cutoff point for registration or party enrollment," *id.* at 760, and (2) such a deadline reasonably deters political party raiding by opposing party members "whereby voters in sympathy with one party designate themselves as voters of another party so as to influence or determine the results of the other party's primary," *id.* at 760-61. Therefore, the Court concluded that the registration requirement did not violate the petitioners' constitutional rights. *See id.* at 762.

{15}     The *Rosario* petitioners sought to affirmatively associate with a political party, *id.* at 755-756, unlike the DTS voters in this case. We find *Rosario* persuasive insofar as the act of voting in a party's primary is, in itself, an act of affiliation. *Miller v. Cunningham*, 512 F.3d 98, 107 (4th Cir. 2007) (Wilkinson, J., dissenting from denial of rehearing en banc). Like the registration requirement in *Rosario*, New Mexico's twenty-eight-day registration requirement does not unconstitutionally infringe on the right to vote because it does not "totally den[y] the electoral franchise to [any] particular class of residents." *Id.* at 757 (noting that courts which have held that a registration requirement was unconstitutional found that "there was no way in which

11

the members of that class could have made themselves eligible to vote"). Crum and other DTS voters could have made themselves eligible to vote by timely registering with the political party that offered candidates and policies that more favorably addressed the issues with which they were immediately concerned. Unlike the *Rosario* Court, we cannot justify the New Mexico registration deadline as a deterrent to political party raiding because that deadline occurs after the candidates and their platforms are known. There is no evidence that political party raiding is a concern in New Mexico.

**{16}** New Mexico's registration deadline is also defensible because it is not too burdensome. The registration requirement permits qualified voters to vote in a different political party primary election each year because it does not require them to be locked into their party affiliation. *See Kusper v. Pontikes*, 414 U.S. 51, 52-53, 58, 60-61 (1973) (holding that the State's legitimate interest in preventing political party raiding was not sufficient to justify the substantial restraint of a statute prohibiting voters from voting in a party primary if they had voted in another party's primary within the preceding twenty-three months); *see also* § 1-4-8(A)(2) (requiring county clerks to reopen registration the Monday following an election). The twenty-eight-day registration requirement does not deprive voters of their right to change

their political party registrations as often as they desire, as long as the reasonable statutory time limit for doing so is observed. Thus, voter participation in New Mexico is encouraged—not discouraged—and a voter's participation is not made so onerous that qualified voters would not be able to effectively participate in primary elections.

{17} It is also significant that New Mexico voters who desire to participate in the primary elections have a reasonable time to determine whether a political party offers candidates and platforms that comport with their beliefs and principles. If so, they may register with that particular party and vote in the primary election. Primary elections are held "on the first Tuesday after the first Monday in June of each even-numbered year." NMSA 1978, § 1-8-11 (2011). Political parties and their candidates announce their platforms and positions on issues well before the registration deadline. Candidacy declarations by preprimary convention designation are filed on the first Tuesday in February for statewide offices or United States representatives. NMSA 1978, §§ 1-8-21.1(A) (2013) & 1-8-26(A) (2014). State conventions are held no later than the second Sunday in March preceding the primary election. Section 1-8-21.1(B). Candidacy declarations for any other office who are nominated in the primary election are filed on the second Tuesday of March. *See* § 1-8-26(B).

{18} Candidates in New Mexico must declare a political party by January and file their declarations of candidacy by either February or March. Crum and other DTS voters are not required to register until May. Therefore, they have two to three months to decide which political party's candidates are more appealing to them before registering with that party. And, as previously stated, the very act of voting in a party's primary is itself the act of affiliating with that party. If during the next election cycle Crum or any other DTS voter decides that his or her immediate interests are favorably addressed by a different political party, he or she may simply change his affiliation at any time up to twenty-eight days preceding the next election.

{19} The registration law incidentally furthers the interest in assuring that primary elections reflect the will of political party members. *Nader v. Schaffer*, 417 F. Supp. 837, 846-47 (D. Conn.), *aff'd*, 429 U.S. 989 (1976). In *Nader,* a federal district court upheld Connecticut's closed primary system and rejected the plaintiffs' arguments, including that the law forced them to enroll in a party in order to participate in the state's primary elections. 417 F. Supp. at 844-45. The *Nader* court reasoned that "a state has a more general, but equally legitimate, interest in protecting the overall integrity of the . . . electoral process [, which] includes preserving parties as viable and identifiable interest groups [, and] insuring that the results of primary elections

. . . accurately reflect the voting of party members." *Id.* at 845. The same legitimate interests support the constitutionality of the modest burden on voters that was challenged in this case. We therefore hold that requiring voters to designate their affiliation with a major political party at least twenty-eight days before the primary election, and only allowing voters to vote for candidates of a party which is designated on their voter registration, are reasonably modest burdens which further the State's interests in securing the purity of and efficiently administering primary elections.

{20} Finally, we note that the instant case calls upon this Court to determine only whether New Mexico's current closed primary system is constitutional and *not* whether it is the only constitutional option available to the Legislature. Our holding in this case should in no way be interpreted as foreclosing the possibility that a different primary system adopted by the Legislature—an open primary, for example—could also be constitutional. *See Cunningham*, 512 F.3d at 106-12 (Wilkinson, J., dissenting from denial of rehearing en banc) (comparing the relative constitutional merits of open and closed primary systems).

## II. CONCLUSION

{21} For the foregoing reasons, we conclude that Section 1-12-7(B)-(C), which

15

establishes New Mexico's closed primary election system, is not unconstitutional. Accordingly, we affirm the district court's grant of RPNM's motion to dismiss.

{22}     **IT IS SO ORDERED.**


_____
                                        **EDWARD L. CHÁVEZ,  Justice**

**WE CONCUR:**


_____
**CHARLES W. DANIELS, Chief Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**BARBARA J. VIGIL, Justice**